FREDERICK C. MARTIN *vs.* CALVIN A. RICHARDS.

JULIA E. MARTIN *vs.* SAME.

FREDERICK C. MARTIN, administrator, *vs.* SAME.

Suffolk.    November 19, 1891. — January 8, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Landlord and Tenant — Personal Injuries — Noxious Odors.*

In an action brought by a tenant at will against his landlord, for injuries sustained in consequence of noxious odors emanating from a disused privy vault in the yard of the demised premises, it was not disputed that the evidence would warrant the jury in finding that the existence of the vault was not known to the plaintiff, or disclosed to him before the injury, and was not discoverable by the exercise of due care, that he exercised due care, and that his injuries were caused by such odors.    There was evidence that the yard, except a narrow strip, was boarded over at the time of the plaintiff's hiring in December, 1888, including a portion about five by six and a half feet slightly elevated above the rest of the yard; that in June, 1889, odors from the place so elevated made the plaintiff and his family ill, and in the following month his infant child contracted diphtheria and died; that upon taking up the boards from this place there was found an old privy vault filled with fecal matter and stagnant water; that in this place as early as June, 1886, there had been a privy shed with an excavation beneath, and in September of that year the board of health notified the defendant that the vault should be cleaned; that shortly afterwards the shed was removed, and the vault, after a small barrel of lime had been put into it, boarded over; and that the odors continued to come from the place from July, 1886, until it was filled in July, 1889.    The plaintiff offered the testimony of an inspector of the board of health, who examined the vault in August, 1886, to show what its condition then was, and also asked a neighbor who moved into a house near by in July, 1886, " After you moved there, did you have any trouble from offensive odors from that old vault ? " and " Did you, within six months after you moved, have any trouble from offensive odors from this old vault ? " but the testimony and questions were excluded.    *Held,* that the evidence was improperly excluded.

There was also evidence that the person who let the premises for the defendant to the plaintiff pointed out one H. to the plaintiff, at the time, as the one to apply to for repairs or anything else about the premises; that the plaintiff did so apply to H. on three different occasions, and in each instance what the plaintiff requested was done by H. or under his supervision; that what was done to the vault in 1886 was done by H., assisted by a laborer; that H., both before and after doing this work, was about the premises making repairs; and that soon after the plaintiff complained of the odors, in 1889, the vault was filled by H., assisted by others. The plaintiff testified that soon after the first trouble from odors was experienced, and before the vault was discovered, he had a conversation with H. in regard to the odors.    He was then asked, " What was that conversation ? " and, " Did you tell H. of the existence of the odors ? " and both questions were excluded.    *Held,* that the questions were improperly excluded; and that the plaintiff on the evidence admitted and offered was entitled to go to the jury.

THREE ACTIONS OF TORT, for personal injuries. The cases were tried together in the Superior Court, before *Thompson*, J., who excluded certain evidence offered by the plaintiffs, and ruled that there was no evidence upon which they could recover, and ordered a verdict for the defendant; and the plaintiffs alleged exceptions. The nature of the evidence appears in the opinion.

*J. H. Morison & C. M. Barnes*, for the plaintiffs.

*I. R. Clark*, (*F. Ranney* with him,) for the defendant.

LATHROP, J. The first case is brought by a tenant at will against his landlord, for injuries sustained in consequence of noxious odors emanating from a disused privy vault on the demised premises. The second case is brought by the wife of the plaintiff in the first case, for similar injuries. The third case is by the administrator of the estate of the infant child of the plaintiffs in the other two cases. It is agreed that the same disposition is to be made of the three cases, and we shall deal with them as if the first action alone had been brought.

The grounds upon which the plaintiff bases his action are that the privy vault was a source of danger, that at the time of the letting it was known to the landlord to be dangerous, that he did not disclose this to the tenant, and that it was not discoverable by the tenant. If the evidence is sufficient to warrant the jury in finding that these propositions are proved, he is entitled to recover. *Minor* v. *Sharon*, 112 Mass. 477. *Cowen* v. *Sunderland*, 145 Mass. 363. *Cutter* v. *Hamlen*, 147 Mass. 471. *Cesar* v. *Karutz*, 60 N. Y. 229. *Coke* v. *Gutkese*, 80 Ky. 598. See also *Bowe* v. *Hunking*, 135 Mass. 380 ; *Stevens* v. *Pierce*, 151 Mass. 207. " But it is not enough that the landlord knows of the source of danger, unless also he knows, or common experience shows, that it is dangerous. He is bound at his peril to know the teachings of common experience, but he is not bound to foresee results of which common experience would not warn him, and which only a specialist would apprehend." Holmes, J., in *Cutter* v. *Hamlen, ubi supra*.

. In the case at bar the justice who presided at the trial in the Superior Court excluded certain evidence offered by the plaintiff, and at the close of the plaintiff's evidence directed a verdict for the defendant.

The hiring by the plaintiff was on December 24, 1888. The yard of the house at this time was, except a narrow strip at one side, entirely boarded over. About eight feet from the house was a place five feet by six feet five inches, which was elevated an inch to an inch and a half above the rest of the yard, and this place was covered with boards nailed down.

About the middle of June, 1889, the plaintiff and his family were troubled by bad odors, which nauseated them and made them ill. During the next month these odors continued, and the infant child contracted diphtheria and died. The odors were found to come from beneath the elevated place in the yard, and, on taking up the boards, the vault of an old privy was found, partially filled with fecal matter and stagnant water, and giving forth foul odors.

There was evidence that, as early as July, 1886, there was a privy shed and an excavation beneath, where these raised boards were in 1888; and that in September, 1886, the defendant, as owner of the premises, had been notified by the board of health of the city of Boston that " the vault should be cleaned." This evidence was admitted " for the simple purpose of showing that the defendant knew there was a vault there in 1886, but not its condition." As no exception was taken to the partial exclusion of this evidence, we need not discuss it further than to say that, while it is clear that the notice was not substantive evidence of the condition of the vault, we see no reason why it was not admissible to show that the defendant had his attention called to the condition of the vault at this time.

There was also evidence that in 1886, shortly after this notice, the shed was removed, a small barrel of lime put into the vault, and some of the boards which had formed the shed were nailed over the vault.

The first exception of the plaintiff is to the exclusion of the testimony of one Reddy, an inspector of the board of health of the city of Boston, who examined the vault on August 4, 1886, and who was not permitted to testify what its condition then was. The only objection which the defendant makes to this testimony is, that it tended to show merely the temporary condition of the vault in August, 1886, and that, as two years and a half elapsed before the letting, it cannot be said that this

condition would or might continue. There is, however, in the case, evidence that offensive odors came from the vault from July, 1886, down to the time of the filling, in July, 1889; and that nothing had been done to it in the mean time except to put in a small barrel of lime, and to cover it over. The evidence, if admitted, might have shown the condition of the vault not to be merely temporary, but to be lasting in its effects, and such that it could not be remedied by the means used. We are of opinion that the evidence was competent, and should have been admitted. See *Cutter* v. *Hamlen*, 147 Mass. 471; *Brooks* v. *Petersham*, 16 Gray, 181.

In *Cowen* v. *Sunderland*, *ubi supra*, some facts appear in the papers on file which are not fully stated in the opinion. The plaintiff fell into a cesspool in August, 1886. The letting was in April of that year. The cesspool had been covered about a year before the accident, in the presence of the defendant, with inch boards, having more than one thickness in some places. Although these boards were old, the person who did the work testified that he did not know whether they had been used before or not, and this was the only evidence on the subject. Over the boards were four or five inches of loam and gravel. Although there was evidence that the boards were decayed when the cesspool was examined after the accident, there was no other evidence to show that they were in this condition either when the cesspool was covered or when the premises were let. It was on this evidence that Mr. Justice Devens said, "From the testimony of the witnesses of these repairs, the jury might fairly have inferred that it [the cesspool] was left in an unsafe state, and known to be so." The case, in effect, determines that the jury might infer knowledge by the defendant at the time of the letting from the knowledge which he had at the time the cesspool was covered; and that evidence of the condition of the cesspool at this time, and of what was then done to it, was admissible.

Two questions put to Mrs. Deegan were also excluded. This witness moved into a house near by on July 3, 1886. She was asked, "After you moved there, did you have any trouble from offensive odors from that old vault?" and, "Did you, within six months after you moved, have any trouble from offensive odors

from this old vault?" The defendant objects to these questions because they assume that the odors were offensive. The questions were not excluded for matter of form, but on the same ground that the question to Reddy was excluded. We are of opinion that they were admissible.

The plaintiff testified that soon after the first trouble from odors was experienced, and before the vault was discovered, he had a conversation with one Haford in regard to said odors. He was then asked, "What was that conversation?" and, "Did you tell Haford of the existence of these odors?" Both of these questions were excluded. The only purpose for which the plaintiff contends that they were admissible is on the issue whether he exercised due care in remaining upon the premises after the odors were discovered and before their source was known. If Haford was the servant of the defendant, we are of the opinion that notice to Haford of the existence of the odors was competent; and if he said anything in reply to assure the plaintiff that there was no trouble with the premises, this also would be admissible on the question of due care in remaining. On the question whether Haford was the servant of the defendant, there was evidence tending to prove that what was done to the vault in 1886 was done by Haford, assisted by a laborer; that this was done soon after the notice to the defendant from the board of health; that Haford, both before and after the time of said work, was about the premises of the defendant making repairs; that one Crosby, who let the premises for the defendant to the plaintiff, at that time pointed out Haford as the proper person to whom to apply in case the plaintiff wanted any repairs or anything done about the premises; and that the plaintiff did so apply on three different occasions, and in each instance such things were done by Haford, or under his supervision. It also appeared that soon after the plaintiff complained of the odors, in 1889, the vault was filled by Haford, assisted by others. We are of opinion that, on this evidence, the jury would be warranted in finding that Haford was the servant of the defendant.

The defendant does not contend that there was not sufficient evidence to warrant the jury in finding that the plaintiff did not know of the existence of the vault before the injury; that he

exercised due care; that the vault was not discoverable by the exercise of due care; that his sickness was caused by the odors from the vault; and that the existence of the vault was not disclosed to the tenant.

The question remains whether, taking the evidence excluded, and which should have been admitted, together with the evidence admitted, there would be enough to warrant the jury in finding that at the time of the letting the defendant knew the source of the danger, and knew, or ought to have known, that danger existed.

On this question the evidence excluded has a very important bearing. If the condition of the vault in 1886 was a dangerous one, and the defendant's attention was called to it, and he undertook to remedy it, and used means which were ineffectual for that purpose, and which he knew or ought to have known were ineffectual, he cannot escape liability by employing a servant to do the work, or escape the consequences of that servant's neglect to do the work properly. The knowledge of the condition of the vault which the servant had must be imputed to the master. See *Baldwin* v. *Casella*, L. R. 7 Ex. 325. *Gladman* v. *Johnson*, 36 Law J. (C. P.) 153. *Applebee* v. *Percy*, 43 Law J. (C. P.) 365.

In *French* v. *Vining*, 102 Mass. 132, where the action was for selling poisoned hay to the plaintiff for the use of the plaintiff's cow, it appeared that paint had been spilt upon the defendant's hay; that he had endeavored to separate the painted hay from the rest, and supposed he had done so; and that from what remained he sold some to the plaintiff. In delivering the opinion of the court, Mr. Justice Ames said : " The declaration charges that at the time of the sale the defendant knew the condition of the hay. The *scienter* is not only a material, but a vital part of the case. It appears that he knew that paint, containing white lead, had been spilt upon the hay, and he must be taken to have known that hay in that condition was unwholesome and dangerous. . . . His knowledge of the accident was certain and positive ; his belief of the success of his remedy for that accident was conjectural, uncertain, and proved to be wholly mistaken. It appears to us that, in venturing to sell the hay, under such circumstances, on his own judgment

that it was safe to do so, he took the risk upon himself, and sold at his peril; and that the charge in the declaration, that he knew the condition of the hay when he sold it, is satisfied by showing that he knew what had happened to it; that he did not and could not know that the effect of the accident had been removed; and that he had in fact taken no effectual means to remove it."

Applying the reasoning of this case, or that in *Cowen* v. *Sunderland, ubi supra,* to the case at bar, it is clear that the plaintiff's exceptions must be sustained.     *So ordered.*