## WILLCOX *v.* LUCY S. HINES.

### (*Nashville.* March 12, 1898.)

1. LANDLORD AND TENANT. *Landlord's liability for injury to tenant resulting from unsafe condition of premises.*

   A landlord is liable to his tenant, on the ground of negligence, not of contract, for an injury resulting from unsafe or dangerous condition of the leased premises existing at date of lease, if the landlord, by the exercise of reasonable care and diligence, should have known, and *a fortiori* if he had actual knowledge of such condition of the premises, provided the tenant had not, at the date of the accident, knowledge, or could not, by the exercise of reasonable care and diligence, have had knowledge of such condition of the premises. (*Post,* pp. *539–560.*)

   Cases cited and approved: Hines *v.* Willcox, 96 Tenn., 148, 328; Stenberg *v.* Willcox, 96 Tenn., 163, 328; Schmalzried *v.* White, 97 Tenn., 39.

   Cited and distinguished: Banks *v.* White, 1 Sneed, 613; Oil Works *v.* Bickford, 14 Lea, 659; Young *v.* Bransford, 12 Lea, 244.

2. SAME. *Same. Degree of care.*

   The same degree of care and diligence, to ·wit: ordinary care and diligence, is required of both landlord and tenant, in such case, to know or discover the condition of the leased premises, though the landlord, by reason of his superior advantages, may be held to a fuller and more accurate knowledge than the tenant. (*Post,* pp. *560, 561.*)

3. SAME. *Same. Case in judgment.*

   The landlord's liability for the tenant's injury is clear where the former had his attention called to and knew of the dangerous condition of the premises, and had agreed and attempted, but failed, to remedy the defects, although the dangers were such

as any ordinary carpenter, in attempting to make the repairs, must necessarily have discovered. (*Post, pp. 563, 564.*)

Cases cited: 37 L. R. A., 147; 155 Mass., 386.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County.    J. W. BONNER, J.

R. McP. SMITH, E. H. EAST, VERTREES & VERTREES for Willcox.

HAMILTON PARKS, J. W. GAINES, and E. A. PRICE for Hines.

WILKES, J.    This is an action by a tenant against a landlord for injuries received from the defective condition of leased premises.    The case has been before the Court heretofore, and opinions were rendered, reported in 12 Pickle, 148, 328, which states quite fully the facts and contentions as then made. At the last trial of the cause in the Court below there was a verdict for plaintiff for $2,300, and, on motion for new trial, upon suggestion by the presiding. Judge, $500 of this amount was remitted, and for the balance, $1,800, judgment was rendered, and defendant has appealed and assigned errors.

It is insisted that the Court erred in following the rule laid down in *Hines* v. *Willcox* and *Stenberg*

v. *Willcox*, 12 Pickle, 148, 163, 328, as to the relative duties and liabilities of the landlord and tentant in regard to dangerous premises, and it is earnestly insisted these cases are not a correct exposition of the law. The contention in brief is, that in the cases referred to, this Court laid down a rule not supported by authority, devolving a duty of active diligence upon the landlord to know the condition of his property when he leases it, as to its safety, and it is insisted the true rule in ordinary cases of rental is "*caveat emptor*," and the duty of examining the premises is upon the tenant, and in the absence of fraud or warranty of condition by the landlord, the tenant takes the property at his own risk. It is insisted that this has been the rule recognized and followed in this State up to the cases of· *Hines* v. *Willcox* and *Stenberg* v. *Willcox*, in 12 Pickle, and that the Court, since the 12 Pickle case, has returned to and reaffirmed this rule in the case of *Schmalzreid* v. *White*, 13 Pickle, 39.

In regard to the latter case, it is only necessary to say that in it, it is expressly stated that what was therein said was not intended to conflict with the case of *Hines* v. *Willcox*, and that case was distinguished from the Hines and Willcox case. In the case in 13 Pickle the Court held that the trial Judge erred in holding the landlord liable, though he may have been ignorant of any defects and conditions, without fault or negligence on his part, thus making the landlord an insurer of the condition of

his premises. In the *Hines* v. *Willcox* case, the landlord was not held to such strict liability, but only held liable for what he knew, or might have known by the exercise of reasonable care and diligence, and then only when the tenant failed to ascertain such facts by the exercise of reasonable care and diligence on his part. There is no conflict in the two cases so far as the real questions presented are involved.

Prior to the case of *Hines* v. *Willcox*, there are in Tennessee only three cases in which the question of the liability of the landlord to the tenant, under conditions somewhat similar to the present, are considered.

The first is the case of *Banks* v. *White*, 1 Sneed, 613. In that case the leased premises became untenantable during the pendency of the lease, caused by the acts of the city authorities in opening new streets, and not by any act of the landlord or any defect in the premises themselves when they were leased, and the Court held that the law does not imply any warranty as to the continuing condition of the property demised—a rule laid down in all the cases and questioned in none, but one wholly different from the principle involved in the present case, which relates to the condition of the premises when leased, and not to any subsequent changes, contingencies, or conditions during the lease.

Another case is that of *Southern Oil Works* v. *Bickford*, 14 Lea, 659. That was a case of a suit by a landlord against a tenant for improperly using

and abusing the premises during the continuance of the lease, whereby the houses were broken down. It did not involve the liability of the landlord to the tenant, arising out of the dangerous or defective condition of the premises when they were leased in any way.

In *Young* v. *Bransford*, 12 Lea, 244, in treating of liability to the public for the condition of the premises, it is stated that it is the duty of the tenant or occupier to keep the premises in repair so far as to make them safe to the public. This, it will be seen, also relates to the continuing condition of the premises pending the lease. The same case adds: "The landlord is liable when he covenants to keep the premises in repair, or when the defect exists at the time of the lease." Citing 1 Thomp. Neg., 317; Wharton Neg., 817. This is the only case in our State, up to that time, prescribing the rule of liability between the landlord and tenant at the time the lease is made, and it holds the landlord liable for defects and dangerous conditions existing at that time.

We are also cited to the case of *Doyle* v. *U. P. R. R. Co.*, as being a case elaborated with great research and ability. 147 U. S., 413. In that case a railroad had let to a party a house which, during the continuance of the lease, was overwhelmed with a snow slide. There was no defect in the premises when let; the snow slide was the act of God occurring afterward, and the landlord was in no way

responsible therefor. The premises were safe when leased, so that this was also a case of continuing condition, and the landlord was not held liable.

The case of *Viterbo* v. *Finlander*, 120 U. S., 712, is also referred to, but that was a Louisiana case, in which the rules of the civil law were applied, and the doctrine of the common law only incidentally mentioned, and not at all involved in the decision of the case, and not commented on or explained.

In the case of *Bowe* v. *Hunking*, 135 Mass., 380 (46 Am. Rep., 471), it was laid down as a rule that if there was a duty devolving on the landlord to inform the tenant of a defect in the premises, there would be no distinction, as a ground of liability, between an intentional and an unintentional neglect to perform it, and there could be no such duty without knowledge of the defect. But this is evidently opposed to the great weight of authority, which discriminates between the intentional and unintentional neglect to perform a duty, the former being a fraud or tort and the latter not. In this case it appears that a step in a stairway had been sawed out, and the landlord knew it and tested it, and deemed it safe, but the tenant, it seems, did not know it, though he had some opportunity to ascertain it, and it was held that he could not recover because of an injury from it. This is an extreme case, which does not commend itself by its facts or reasoning to general approval. The defect was one which no tenant would expect

or be on the lookout for, and, while known to the landlord, it was not called to the tenant's attention, and was clearly a trap which the tenant did not see, and could not anticipate nor discover with any reasonable care.

The case of *Edwards* v. *N. Y. & Harlem R. R. Co.*, 98 N. Y., 45 (50 Am. Rep., 659), is also referred to with approval, and from it is cited an extract, as follows: "It is a universal rule, to which no exception can be found in any case now regarded as authority, that, upon the demise of real estate, there is no implied warranty that the property is fit for occupation or suitable for the use or purpose for which it is hired." This evidently has reference alone to the liabilities arising out of the contractual relation between the landlord and tenant. The same case, on page 661, recognizes a distinct ground of liability resting upon the delictum of the landlord, and not on contract. It says: "If he [the landlord] demises premises knowing that they are dangerous and unfit for the use for which they are hired, and fails to disclose their condition, he is guilty of negligence which will, in many cases, impose responsibility upon him." And again, same page: "The responsibility of the landlord is the same in all cases. If guilty of negligence or other delictum which leads directly to the accident and wrong complained of, he is liable; if not so guilty, no liability attaches to him. If he lets a building for a warehouse, knowing that it is so weak and imper-

fectly constructed that the floors will break down from the weight necessary to be placed upon them, his negligence imposes liability upon him for injury to the person or property of anyone who may be lawfully upon the premises using them for the purposes for which they were demised.''

The case of *Jaffe* v. *Harteau*, 15 Am. Rep., 438, is also cited, and in that case it is held, without any mature consideration, that, in the absence of fraud or warranty, the landlord is not liable for the present or future condition of leased premises, but the case evidently considers only the liabilities arising out of the contractual relation of the parties, and does not refer to such liabilities as arise out of the delictum of the landlord. And the same may be said of *Keates* v. *Cadogan*, 10 C. B., 591, and *Robbins* v. *Jones*, 15 C. B., N. S., 240, referred to, which simply state the rights arising out of the contractual relation, and do not consider the matter from the standpoint of delictum on the part of the landlord. But in the case of *Jaffe* v. *Harteau*, the Court is evidently influenced, if not controlled, by the fact that the defendant did not know, or have any reason to suspect, that the premises were dangerous, thus impliedly recognizing the doctrine of some care upon the part of the landlord, and relieving him because he did not know or have reason to suspect.

It may be conceded that no ground of liability arises out of the contract between the landlord and tenant in the absence of fraud or warranty, but a

16 P—35

great number of cases in which the question has been considered hold that there is an independent ground of liability arising out of the delictum or wrong of the landlord in leasing premises dangerous at the time, and there is not necessarily any conflict between the two classes of cases when properly understood. This distinction was attempted to be pointed out in *Hines* v. *Willcox*, 12 Pick., 332–334, and cases were cited.

There is also a distinction drawn in the cases between patent and hidden defects. In the former, when the landlord and tenant exercise the same care, and have equal opportunities for examination, there is no ground of liability on the part of the landlord to the tenant, inasmuch as the negligence of the landlord is neutralized in its effect by the negligence of the tenant, and the ordinary rule of contributory negligence by the injured party applies to defeat any recovery by the tenant. In regard to hidden or secret defects or dangers, the cases are uniform that if they exist and are known to the landlord and not disclosed to the tenant, the landlord will be liable, because such conduct amounts to a fraud.

It is insisted, however, that in such cases of hidden defects there is no liability in the absence of actual knowledge on the part of the landlord, and fraud and deceit practiced by him. The case of *Hines* v. *Willcox*, heretofore reported, goes one step further than this, and holds the landlord liable,

not only if he has actual knowledge, but also if by the exercise of reasonable care and diligence he could have such knowledge, and it is only upon this latter proposition that there is any difference of opinion.    Hence it is strenuously insisted that no active duty devolves upon the landlord to ascertain such · hidden defects and dangers, and, in the absence of actual knowledge, the landlord will not be liable for any damages.    The logic of this position is that a landlord is under no obligation to know anything about the condition of his premises, whether they are dangerous or safe, whether habitable or a nuisance, and so long as he keeps himself ignorant, either intentionally or negligently, he cannot be held liable for any damages resulting from the dangerous condition of his property when leased.    But if by accident or examination he becomes aware that a secret defect does exist, then he is liable if he fail to disclose it.    Under this ruling the landlord is placed in the better condition the more negligent and inattentive he is, and a premium is put upon his ignorance.

In the case of *Hines* v. *Willcox*, 12 Pickle, 328–348, the rule is laid down that he is liable for what he knows, or by the exercise of reasonable care and diligence ought to know, about his property, provided the tenant at the same time exercises reasonable care and diligence, and the authorities were cited.    It was not attempted in the 12 Pickle case to lay down the degree of diligence that the land-

lord must exercise, the trial Judge having in his charge relieved him from any diligence or duty whatever, and the question before the Court being whether such charge was correct as thus broadly put. It was said, however, page 331, that "the rule laid down does not place upon the landlord the obligation of an insurer or warrantor by contract, nor. does it impose the extreme duty of constant care and inspection," but only reasonable care and diligence, and the like reasonable care and diligence is required of the tenant, thus imposing reasonable care and good faith upon both in the absence of any contract or warranty.

Several cases were cited supporting the holding as thus made, and others might have been collated from the mass of authorities upon the subject. The case of *Hines* v. *Willcox* has been re-reported in 34 Lawyers' Reports, 824, and extensively annotated by Mr. Henry P. Farnham. The learned annotator states that the case is a new departure in the law of landlord and tenant, and he has industriously collated authorities to sustain his assertion, and has commented upon some of the authorities cited, leaving, however, the great bulk of the cases cited in *Hines* v. *Willcox* without comment. The annotation is valuable as a brief upon the liability of the landlord to the tenant arising out of the contractual relation, but it is to be regretted that the learned annotator did not also collate the authorities bearing upon the true question presented in the *Hines* v. *Willcox* case

of delictum on the part of the landlord in leasing dangerous premises, and did not comment more fully upon the numerous authorities imposing upon the landlord some obligation to know the condition of his premises when leased.

Quite a complete and discriminating review of the authorities up to date of 1886 is found in the case of *City of Lowell* v. *Spaulding*, 50 Am. Dec., 776 to 783. See, especially, this feature treated at page 780, with citations.

The ground of liability upon the part of a landlord when he demises dangerous property, has nothing special to do with the relation of landlord and tenant. It is the ordinary case of liability for personal misfeasance, which runs through all the relations of individuals to each other. As is substantially said by Ruger, Chief Justice, in *Edwards* v. *Railroad*, 50 Am. Rep., 673 (dissenting opinion): "The liability does not rest upon the theory of an express contract between the owner and person injured, but on the obligation which the law imposes on all to so keep and use their property that others using it and entering upon it by their invitation, shall not be injured by its improper condition or unfitness, and its inadequacy for the purposes to which it has been devoted." And as is stated in *Cowan* v. *Sunderland*, quoted in *Hines* v. *Willcox*, there is an exception to the general rule of *caveat emptor* as between lessor and lessee, "arising from the duty which the lessor owes to the lessee. This

duty does not originate directly from the contract, but from the relation of the parties, and is imposed by law." It is not upon the ground of an insurer or warrantor of condition under his lease contract, but on the ground of the obligation implied by law not to expose the tenant or the public to danger which he knows, or in good faith should know, and which the tenant does not know and cannot ascertain by the exercise of reasonable care and diligence.

"In cases where lessors have been held liable for injuries to lessees, the liability is founded on neg· ligence. . . . The action of tort has .for its foundation the negligence of the defendant, and this means more than a breach of promise. . . . There must be some breach of duty distinct from breach of contract," etc. *Tuttle* v. *Gilbert Mfg. Co.*, 145 Mass., 174, 175.

In *Kern* v. *Myll*, 80 Mich., 530, it is said in a suit between tenant and landlord: "The cause of action does not rest upon any .covenant, express or implied, of the landlord to repair the premises, nor that they were habitable at the time the lease was made, nor does it rest necessarily upon the relation of landlord and tenant. . . . But the cause of action is based upon the maxim that every person must so use his own premises as not to injure others either in person or property." The declaration showed a nuisance when the premises were leased, known to defendant and concealed from plaintiff, calculated to injure his health.

Willcox *v.* Lucy S. Hines.

On the former trial of this cause a few cases were cited upon the point of liability of the landlord, where he knows, or by using reasonable care and diligence ought to know, of the danger or nuisance, but it was not attempted to cite them all.    The following were cited in 12 Pickle, 335: *Martin* v. *Richards*, 155 Mass., 381; *Bashe* v. *Boyce*, 73 Md., 469; *Carson* v. *Godley*, 26 Penn. State, 111; *Coke* v. *Guthkese*, 44 Am. Rep., 499; *Lindsley* v. *Lupton*, 150 Mass., 288; *Moynihan* v. *Allyn*, 162 Mass., 272; Pingrey on Real Estate, Sec. 592.

We add others, but by no means all that may be cited: *Albert* v. *State*, 59 Am. Rep., 159; *Timlin* v. *The Standard Oil Co.*, 22 Am. State Rep., 849–851; Wood on Landlord & Tenant, p. 855; *Cowen* v. *Sunderland*, 145 Mass., 363; *Minor* v. *Sharon*, 112 Mass., 477; *Butler* v. *Cushing*, 48 Hum., 617; *Cutler* v. *Hamlen*, 147 Mass., 471; *Booth* v. *Merriam*, 155 Mass., 521; *Oxford* v. *Leathe*, 165 Mass., 255; *Wilcox* v. *Zane*, 167 Mass., 306; *Lynch* v. *Swan*, 167 Mass., 570; *Matthews* v. *Degraff*, 13 Hum., 356; *O'Dwyer* v. *O'Brien*, 13 Hum., 570; *Metzger* v. *Schultz*, 59 Am. State Rep., 323.

In *Albert* v. *State*, 59 Am. Rep., 159–161, a wharf was rented, and it was said "if defendant knew, or by exercise of reasonable diligence could have known, of its unsafe condition, and the accident happened in consequence of such condition, the plaintiff was entitled to recover."

The true doctrine is well stated in *Timlin* v. *The* ·

*Standard Oil Co.*, 22 Am. State Rep., 849: "The law does not impose upon the landlord the duty of constant care and inspection of premises. It imposes upon him the duty of reasonable care to inform himself of the condition of the property which he proposes to let, and if at the time of leasing he knew, or if, in the exercise of reasonable care, he would become informed of the fact that the property has upon it a nuisance dangerous to the public, or to an adjoining owner, it imposes upon the owner and proposed lessor the duty to abate it before he leases the property, and if he does not, it leaves him with a liability to respond in damages to anyone injured in consequence of and by the nuisance." And again it is said, p. 851: "If he was, in truth, ignorant, and yet by the exercise of reasonable care and diligence he would have known of its existence, there is no principle that can exempt him from responsibility any more than if he created the nuisance himself."

In *Winder* v. *McLean*, 19 Am. St. Rep., 702, the matter is presented in a shape that shows the sound reason and good sense of the rule that the landlord is liable if the premises are dangerous when he leases, and the tenant if they become dangerous when he has them leased. It is laid down that the landlord is liable if the premises are a nuisance when leased, and he cannot escape liability by leasing the property to a tenant and putting him in possession. To the same effect are *Knauss* v. *Brua*, 107 Pa. St.,

85; *Fow* v. *Roberts*, 108 Pa. St., 489; *Leonard* v. *Storn*, 15 Am. Rep., 78, 79, note; *Ingeursen* v. *Rankin*, 54 Am. Rep., 109; *Tomle* v. *Hampton*, 129 Ill., 379; *Kern* v. *Myll*, 80 Mich., 525; *Riley* v. *Simpson*, 83 Cal., 217; *Nugent* v. *Boston Railroad*, 80 Me., 63; *City of Lowell* v. *Spaulding*, 50 Am. Dec., 780, notes.

In *Cutler* v. *Hamlen*, 147 Mass., 475, the Court held that when the landlord knew the drains were defective, and also that diphtheria had been in the house, the jury would have been warranted in finding that the landlord knew, or ought to have known, as a prudent man, that this was dangerous.

In *Lindsey* v. *Leighton*, 150 Mass., 288, the Court was asked to charge that it must be known that the defendant had knowledge of the defect, or they could not hold him. The trial Judge refused, and, on appeal, the Supreme Court said this refusal was correct, that it was not necessary to show that defendant had actual knowledge of the defect. His duty was that of due care, and ignorance of the defect was no defense. Citing *Gill* v. *Middleton*, 105 Mass., 477; *Redman* v. *Conway*, 126 Mass., 374; *Looney* v. *McLean*, 129 Mass., 33; *Watkins* v. *Goodall*, 138 Mass., 533. This was a case of defect in steps leading to a tenement occupied by plaintiff. There was evidence that defendant's attention had been called to the defect, and he had frequently passed over the steps.

In *Martin* v. *Richards*, 155 Mass., 386, the Court

held that if the condition of the vault, in 1886, was dangerous, and defendant's attention was called to it, and he undertook to remedy it and used means which were ineffectual to remedy it, and which he knew, or ought to have known, were ineffectual, he cannot escape liability by employing a servant to do the work and escape consequences of the servant's neglect to do the work properly. The knowledge of the servant must be imputed to the master. Citing *Baldwin* v. *Casella*, L. R., 7 Ex., 325; *Gladman* v. *Johnson*, 36 Law J., C. P., 153; *Applebee* v. *Percy*, 43 Law J., C. P., 365.

In *Moynihan* v. *Allyn*, 162 Mass., 272, it was held that the minor could not recover because the defect was in existence when the premises were let. The defect was in a platform common to several tenants, but the controlling feature was, that its condition could have been ascertained by reasonable examination of the tenant. The Court held that defendant's duty was to keep the platform in as good condition as when leased, and to inform the tenant of any hidden defects which could not be discovered by reasonable diligence.

In *Booth* v. *Merriam*, 155 Mass., 522, it is said: "If there is a concealed defect that renders the premises dangerous, which the tenant cannot discover by the exercise of reasonable diligence, of which the landlord has or ought to have knowledge, it is the landlord's duty to disclose it, and he is liable for any injury which results from his concealment of it. It

is also said in the case, that there was nothing to show that defendant had actual knowledge of the danger or was culpably responsible for ·it, and that it was' such as could have been easily discernible.

In *Oxford* v. *Leathe.* 165 Mass., 255, the landlord was held liable for the condition of a platform used to go into a place of public amusement, on the ground that he must have contemplated the public would go on it and the liability is stated to be just the same as if the premises are let with a nuisance upon them. Citing many familiar cases.

In *Wilcox* v. *Zane,* 167 Mass., 306, nurse of tenant was injured by defective condition of roof used by all the tenants in the building to hang out clothes and other purposes. There was no evidence that plaintiff did not exercise due care. There was evidence that the plank which broke was badly decayed, cross-grained, and knotty, and no repairs had been made on the roof· for years. The plaintiff testified that he had never noticed the defect. It was held that she had no such duty to observe the condition of the roof as to safety as the landlord had.

In *Lynch* v. *Swan,* 167 Mass., 510, there was an injury upon a common stairway used by several tenants. The Court says there was some evidence that the step was not strong enough, and the question was whether or not the landlord knew this or ought to have known it. It was not· so apparent that plaintiff could be held to take the risk. The Court say the question is this, Was there evidence for the

jury that the landlord ought to have known it, or would have known it if he had exercised reasonable care? And again the Court emphasizes what the landlord knew, or ought to have known, as the controlling feature in the case.

In *Matthews* v. *DeGraff*, 13 Hun, 356, it was held to be the duty of a landlord to keep in repair a coal hole or chute in the sidewalk in front of premises which he leased, and that he must from time to time examine and see its condition, even though the same tenant held over from term to term, and it is put on the ground that it is the duty of the landlord to examine and ascertain the condition of the property when he leases it, and the holding over from term to term was in effect a new lease each term. This proceeds upon the idea that the landlord owes a duty to the public to have his premises safe when he leases them, even though the obligation is on the tenant to make repairs during the lease.

In *O'Dwyer* v. *O'Brien*, 13 Hun, 570, it was held that the landlord would be liable for the defective repairing of a plank walk on the premises used by plaintiff but for the fact that the tenant could and did see the defect and danger, and was thus guilty of such contributory negligence as would defeat her recovery.

In *Bashe* v. *Boyce*, 73 Md., 469, it was held that the owner of a wharf was not liable for injuries sustained by an employe of a lessee from a rotten

Willcox *v.* Lucy S. Hines.

plank unless it appears that the owner knew, or by reasonable care and diligence could have known, the unsafe condition of the wharf when he leased it. See, also, *Metzger* v. *Schultze*, 16 Ind. App., 454; 59 Am. St. Rep., 323.

It was not held in *Hines* v. *Willcox*, that a landlord is liable for a defect which occurs or a danger that arises after the lease has been made and while the tenant is in possession. For these defects and dangers the tenant not only has no recourse against the landlord, but he is, on the contrary, liable himself to third persons who may be injured. But the landlord is liable for such defects and dangers as are in existence when the lease is made, provided he knew of them or ought to know of them, and provided also that the tenant does not know of them and could not know of ' them, both parties in the matter exercising reasonable care and diligence. Several distinctions are attempted to be drawn, but so far as they affect the question of the duty of the landlord to know the condition of his premises, there is no ground for any difference in its application. It is said that many of the cases in which the expression "ought to know" is used in regard to the landlord, are cases in which the landlord remains in possession of a portion of the premises while other portions of the same premises are in the possession of other tenants. But the only difference between the two classes of cases appears to be this, that the liability of the landlord ordinarily ceases if he rents

out the entire premises, but when he retains part it continues so long as he is in possession of such part used for common purposes. When the entire premises are leased, the landlord is liable if the premises are dangerous when he makes the lease, but ordinarily not longer; when he remains in possession of a portion, his liability continues so long as he remains in possession of that portion not leased. In the former cases it is his duty to know the condition when he leases; in the latter, to know the condition so long as he retains control of any part of the common property. The obligation in either case to know the condition of the property is the same, but in the former it ceases after the tenant enters; in the latter it is a continuing obligation while the landlord retains possession.

It is said that some of the cases cited are cases of public property, such as docks, wharves, theaters, and other places of public resort, and it is attempted to. show that these form exceptions to the general rule. Even if this were so, it could not avail in this case, as the property in this case was rented for boarding house purposes, and so known to the landlord or his agent. But we are unable to see any ground for the application of a different rule in such cases. In the one case we have an instance of a *quasi*. public nuisance, in the other a case of *quasi* private nuisance. But the obligation not to expose the individual to danger is the same as that not to expose the public to danger.

It has been said that a private nuisance " is any-thing done, . . . or omitted to be done, con-trary to a legal duty, from which an injury results to another " (16 Am. & Eng. Enc. L., 929–30), and there is no difference in principle between a condi-tion which is called a private and one called a public nuisance. One is where the danger is to the in-dividual, the other when it is to a number of indi-viduals or the entire public.

So far as there is any obligation on the landlord to know the condition of his property, it does not matter whether the dangers and defects are patent or secret, unless, indeed, there is some more stringent duty in the latter case, inasmuch as it may be pre-sumed that as to patent dangers they will most probably be seen by the tenant if he has the op-portunity of examination. But to hold that the rule of *caveat emptor* applies to all cases of rental when there is no warranty, is to ignore the large mass of cases, which hold the landlord liable (1) if he is guilty of fraud or deceit, (2) if he leases premises which are dangerous when leased. The result of this doctrine, if carried out, is that if a tenant has no opportunity to examine the premises he must never-theless take them at his own risk. If, for instance, a landlord leases premises in a distant city which the tenant does not see, and has no opportunity to ex-amine, under the rule of *caveat emptor*, if the tenant enters without an opportunity for examination, and is injured by the dangerous and defective condition of

the premises, the landlord is not liable. Such doctrine is not based on any sound reason, and the true rule is that the rule of *caveat emptor* only applies so far as the rights of the parties rest on contract, or when the tenant has an opportunity to examine the premises, and the defect is so obvious and the danger so apparent that he can see it by using ordinary care and diligence.

It is argued with much earnestness and ability that in order to make the rule operative it must be held that the landlord is required to exercise a greater degree of diligence and care than the tenant. But this position is · not, we think, well taken. The degree of care and diligence required of each is the same—that is, reasonable care and diligence, such as a reasonably prudent person would exercise if surrounded by the same or similar circumstances. From the very nature of the case the same degree of care and diligence exercised by each would in many, if not all cases, enable the landlord to know more than the tenant. The former owns the property, has daily access to it and an opportunity to know its condition, and his attention s or may be called to defects by previous tenants. The tenant sees the property but once perhaps, and that in a more or less hurried manner. Not being familiar with the premises, he cannot by such inspection know as much of the property as the landlord does. Again, each may see the same defect, and the danger arising out of such defect may not be

apparent at a glance or single examination such as the tenant can make, and he may well presume, that, if dangerous, the landlord would not let it, nor would previous tenants have occupied it. The landlord, however, may have had his attention called to the defect by prior tenants, and he may have observed them time and again. In such case it would be obligatory upon him to ascertain the cause and extent of the defect, and whether dangerous or not. The opportunities and means of information of the landlord are necessarily greater than those of the tenant when both exercise the same degree of care and diligence. This idea is forcibly illustrated in the present case, where a defect was clearly apparent but the cause of it and the danger arising out of it were not. The tenant, looking at the opening between the porch and wall, would not discover its cause upon a single examination, and he might well presume that it only amounted to a matter of some discomfort and inconvenience from falling rains and snows. But the landlord's attention had been called to it more than once by a former tenant, and he had been notified of the danger. Under such circumstances it was incumbent on him to have examined into the extent and cause of the defect, and the proof is clear that the danger would have appeared to any workman or other person who would investigate the cause of the defect.

It is said this rule of reasonable diligence on the

16 P—36

part of both landlord and tenant destroys itself, for if the danger is apparent either party may see, and, the negligence of the landlord being neutralized by that of the tenant, there can be no recovery. Even if this were so it is no more than the application of a similar doctrine in many other relations of life, as, for instance, when the negligence of the master is neutralized by the contributory negligence of the servant, so as to prevent the latter from recovering when he would be otherwise entitled to recover.

So, also, in case of railroad or other accidents and injuries, a party injured has the right to recover because of the negligence of the railroad or other party, but he may lose this right because his own negligence has contributed to and is the direct cause of the injury, and the same rule applies in other relations.

It is evident, however, that this rule of counterbalancing negligence can only apply to cases where the tenant has the opportunity to see, examine, and ascertain not only the defects but also the dangers equally with the landlord.

The trial Judge in his charge followed substantially the rules laid down in *Hines* v. *Willcox*, and *Stenberg* v. *Willcox*, reported in 12 Pickle, and upon a re-examination of these cases, after the ablest arguments and most severe criticism, the majority of the Court does not see that the principles there laid down, when properly understood and applied,

are wrong. Judges Beard and McAlister do not concur in the rules there laid down.

In the case now on trial there are other features that are equally conclusive of the plaintiff's right to recover. There is evidence in the record tending to show that the plaintiff actually knew the dangerous condition of the porch when the lease was made, also that he had his attention called to such dangerous condition after the lease was made, and promised and undertook to make it safe and sent a carpenter to. make the necessary repairs, and that after they were made the tenants were assured the premises were safe. It is true there is some conflict on both the points as. to what repairs were promised and what were made, but there is evidence from which the jury would be warranted in holding as they did, and in concluding that the undertaking and effort of the landlord was not merely to shut out the snow and rain by tacking a little tin over the opening, but to make the porch safe and secure, and the evidence is quite clear that any ordinary carpenter or workman, in attempting to make any repairs, could not but see the dangerous conditions existing. Upon this point see the cases of *Werthheimer* v. *Saunders*, 37 L. R. A., 147; *Martin* v. *Richards*, 155 Mass., 386, and cases there cited.

We are of opinion there was evidence to warrant the jury in believing that the premises in this case were in dangerous condition when they were let;

that while the defect was to some extent patent, the danger was not so apparent that the plaintiff, in the exercise of ordinary care and diligence, could have known of it; that there was an obligation upon the landlord to make such examination of the premises as a reasonably prudent man would do in order to ascertain their condition, and especially under the circumstances of this case; that there is no evidence of any attention or care or diligence on the part of the landlord whatever, his theory being he is under no obligation to exercise any; that the attention of the landlord and his agent was called to the condition of the porch both before and after the lease, and the defect was of such character as would have led a reasonably prudent man to have seen the danger when he attempted to repair it, and that it was negligence not to make it safe after undertaking to work on it, and that there is liability on the part of the landlord to the tenant, arising out of these facts and conditions, for which he is liable, and the judgment of the Court below is affirmed with costs.

Judges Beard and McAlister dissent.