LORRAINE SHAW, AN INFANT, BY ORION D. SHAW, HER NEXT FRIEND, Appellant, v. J. L. BUTTERWORTH AND JAMES PRICE.—38 S. W. (2d) 57.

Division Two, April 14, 1931.

624

*W. R. Hedrick, Burns & White* and *Dale E. Tourtelot* for appellant.

*Langworthy, Spencer & Terrell* for respondents.

DAVIS, C.—This is an action for damages, praying thirty thousand dollars, for personal injuries averred to have been caused as the result of the giving away of a screen in a third-story window, thus precipitating plaintiff, a four-year-old girl, to the ground below. At the close of plaintiff's case, the court announced that instructions to find for defendants would be given to the jury, and they were so marked, whereupon plaintiff took an involuntary nonsuit with leave to move to set the same aside. Such motion was filed and overruled, and plaintiff appealed.

The evidence adduced warrants the finding that defendant Butterworth was the owner, and defendant Price the janitor, of a certain apartment building at 1114 Paseo, in Kansas City, which faced east, was four stories in height, and comprised eight apartments. Plaintiff's parents rented the north third-story apartment, and became a tenant from month to month, paying a month's rent in advance, and moving in on September 16 or 17, 1925. The family comprised plaintiff's parents and seven children, including plaintiff, who was then four years of age.

Price was the janitor of the apartment building, and negotiated the renting of the apartment, and received and accepted the rental money. Mrs. Shaw, plaintiff's mother, negotiated the rental contract with the janitor, assisted by plaintiff's grandmother, Mrs. Henning, who occupied an apartment in the building. Mrs. Shaw testified that during the rental negotiations she observed that two screens were out, one in the window of the so-called west bedroom, but no examination of the window was made. She then asked the janitor for screens, advising him that she wanted them so that the children would not fall out, and he replied that he would get the screens for her; that everything would be all right when she moved in. She told the janitor that she had three little children. However, the screens were not put in, and she had to ask the janitor for them, but he was able to procure only one screen, and that was placed in the window in said west bedroom. In putting it in, the janitor stood in the room and forced the screen in. She looked at it, and said it looked as good as she thought it ought to; that, without examining it, it looked all right to her.

A first cousin of the plaintiff was the only witness who observed the occurrence of plaintiff's fall. Plaintiff's sisters, one a twin and the other two years old, were present in the room on that occasion,

but they were propably too immature to testify, as was plaintiff. This cousin, who also resided in an apartment in the same building and who was then in the Manual High School and assumedly in his late teens, testified that he was in the habit of bringing candy to the babies, plaintiff and her two sisters, and that on October 17, 1925, between three and four o'clock in the afternoon, the entrance door to the apartment being unlocked as usual, he walked into the west room, where the babies were, with a bag of candy in his hand, and observed plaintiff sitting in the window with her back to the screen. He said as he went in the door, "Babies, I have got some candy for you," and plaintiff, sitting on the window sill, seemingly becoming excited when she saw the candy, pushed herself to get out of the window, forcing the screen out, and falling backwards to the ground below, suffering injuries. A little later that day she was taken to the Mercy Hospital, and remained at the hospital until shortly prior to Christmas, the first two weeks of which she was unconscious. Witness saw the screen lying on the ground next to plaintiff, when he rushed down to her, but he paid no further attention to it. That, in effect, was the last seen of the screen according to plaintiff's witnesses.

The sill of the window from which plaintiff fell was from a foot and a half to a foot and three-quarters above the floor. The said west bedroom had only one window in it. The screen that pushed out when plaintiff fell was placed by the janitor in the window about three days after plaintiff's family moved in.

The screen, when adjusted to the window, fitted between two metal cleats, from a half to three-quarters of an inch in depth, which were fastened to the window frame and extended the length of the lower sash. The screen fitted into the cleats and the arrangement was similar to that of the tail gate of a wagon. One witness described the arrangement as a groove or a little channel that the metal screen works in, up and down. Several witnesses made an examination of the metal cleats and window casing after plaintiff's fall. All witnesses testified that the cleats were rusty; one or two that the rust appeared to be a year old, and others that the outside cleat appeared to have been forced out, probably by a screw driver, so that in places at least it protruded at an angle of forty-five or fifty degrees from the frame instead of extending from it at right angles. A carpenter testified that the outside cleat or flange had been pushed out probably by crowding a screen in that did not belong in there; that there was not very much of that outside flange left, probably half of it was there and it was pretty rusty. Most of the outside flange was mashed and "seared" up. One witness said that practically all of the flange was bent outward. The screen was not fastened or anchored with a hook or hooks.

Plaintiff's grandmother, a tenant, testified that defendant Price was the janitor, and that he collected the rents and did the repairing and cleaning. She said that he brought a radiator to her kitchen, mending it, putting it together and repairing it. She could not state exactly all that he did, but he was supposed to repair and do whatever was to be done around there.

Plaintiff's mother testified that she rented the apartment from the janitor (defendant Price), and that he would clean the front halls and take care of the plumbing work and the general repairing. On objection, she was asked to tell what she saw him doing around there, and she replied that she saw him cleaning the halls, emptying garbage cans and paper sacks and sweeping the back steps; that they had another janitor and he was decorating, as near as she knew anything about it. Plaintiff's father testified that defendant Price did general work, but he never saw him do any repair work, just cleaning the steps. Other facts, if any, will appear in the opinion.

It may be well to state that the issues involved do not require a summary of the evidence relating to plaintiff's injuries, and, consequently, we omit such summary.

I. The propriety of the action of the trial court, in determining that the facts were insufficient to make a case submissible to the jury, is challenged by plaintiff.

In the absence of a covenant or promise, the tenant must take the premises in the condition in which he finds them, for to a mere contract of letting the rule of *caveat emptor* is relevant. An implied covenant on the part of the landlord that the premises are suitable for the purposes for which they are rented, or that they are in any particular condition, does not arise from the mere renting of premises. [Holzhauer v. Sheeny, 127 Ky. 28, 104 S. W. 1034.] An exception or extension to the rule obtains, however, to the effect that a landlord, undertaking to make repairs upon the demised premises, is liable upon making such repairs for an injury caused by his negligence or that of his servant. And he is liable notwithstanding the repairs were made gratuitously or without obligation. Nor is his liability limited to the tenant personally, but comprehends all persons, such as the tenant's family, servants and guests, using the premises pursuant to the contract of letting. [36 C. J. 217, 218, 219.] Within this exception to the rule is the negligent construction of improvements on the demised premises by the landlord. [36 C. J. 218; Klonowski v. Mfg. Co., 217 Ill. App. 150; Mortrude v. Martin, 185 Iowa, 1319, 172 N. W. 17.]

II. Defendants contend that the record is without evidence that defendant Price, the janitor, had authority to bind defendant Butterworth, the owner, because evidence of express authority from But-

terworth to Price to make an agreement to furnish a screen of sufficient strength to prevent a person falling from the apartment window was lacking. In this regard the evidence tends to show that, pursuant to the contract of letting negotiated by Price, Butterworth received and accepted plaintiff's family as tenants of the apartment. It is evident, therefore, that Price was clothed with apparent authority to negotiate and provide the usual and customary alterations and additions desired by a prospective tenant. And, as it is clear that the building was constructed for and equipped with screens, it was within the province of Price to agree to provide the screens missing from the two windows, resulting that Butterworth was bound by the promise, and that notice to Price was notice to Butterworth, both as to the declarations of plaintiff's mother and as to the condition of the building. [Holzhauer v. Sheeny, 127 Ky. 28, 104 S. W. 1034; Martin v. Richards, 155 Mass. 381, 29 N. E. 591; Evers v. Weil, 17 N. Y. Supp. 29, 62 Hun (N. Y.) 622, affirmed without opinion in 135 N. Y. 649, 32 N. E. 647; Nadel v. Fichten, 34 App. Div. (N. Y.) 188, 54 N. Y. Supp. 551, 88 St. Rep. 551; Dollard v. Roberts, 29 N. E. (N. Y.) 104, 14 L. R. A. 238.] As the evidence tends to show that Price was imbued with authority to bind Butterworth, defendants' contention in the above respects is overruled.

III. Defendants cite Egan v. Krueger, 103 N. J. L. 474, in support of their position that a screen cannot be held to be placed in a window for the purpose of preventing persons from falling thereout, thus contending that such postulate destroys plaintiff's cause of action. In that case the facts show that, upon leaving the room, the child's mother heard a scream, rushed back and found the child and the screen in the courtyard below; that the defendant installed and maintained the screens, and it appeared that the screen in the window in question had been blown out by the wind some time previous, and did not properly fit the window. While the court held that the facts failed to explain how the accident itself happened, nevertheless it grounded a denial of the right of recovery in plaintiff on the asserted axiom that "a screen in a window, obviously and of common knowledge, is not placed there for the purpose of keeping persons from falling out of a window, any more than the glass in the window itself is placed there for that purpose." We recognize that the reasoning and determination of the learned court has force and persuasion, yet, as the facts in the case before us are not analogous to the facts there found, we think it unnecessary to attempt to analyze the ruling. Clearly in this case plaintiff's mother during the rental negotiations advised the defendants that she had small children, and demanded the placing of screens in the windows to prevent the children falling thereout. The defendants promised to put them in and this promise

630

became a covenant of the rental contract. It is evident, we think, from the negotiations and the season of the year, that the mother's primary purpose in demanding and desiring the screens was the protection of her little children. That the evidence tends to show that defendants fully understood such purpose, we think is plain. Moreover, while a primary purpose of a window is to admit light and air, and to prevent the entry of objectionable elements, and that of screens to keep out insects while letting in light and air, yet it is common knowledge that a secondary purpose is allocated to windows and screens and that purpose involves ordinary protection against persons falling from the window. [Miller v. Peck Dry Goods Co., 104 Mo. App. 609, 78 S. W. 682.] It is also common knowledge that a screen, constructed and placed in a window casing in the manner ordinarily done, is sufficiently secure to withstand the pressure of a person leaning against it. It was a jury question as to whether the screen as originally constructed was intended to withstand ordinary pressure. It is evident that plaintiff, being of tender age, cannot be charged with contributory negligence because she sat in the window. [Volz v. City of St. Louis, 32 S. W. (2d) 72; 20 R. C. L. p. 127, par. 106.] As plaintiff's mother advised the defendants that she desired the screen to protect her little ones against falling out, and as defendants placed the screen in the window pursuant to their promise, we think the evidence tends to show that defendant's contract comprised the inclusion of a screen ordinarily fit for that purpose. Plaintiff's injuries were within the anticipation and contemplation of the parties. [Ross v. Haner, 258 S. W. 1036.]

IV. Defendants submit (1) that, in the absence of an undertaking to repair, there was no obligation to repair; (2) that the defendants were liable only for acts of misfeasance and not for acts of nonfeasance; and (3) there was no implied warranty as to the condition of the premises. We agree that the principles and rules of law as thus enunciated are true and correct (Glenn v. Hill, 210 Mo. 291, 109 S. W. 27; Kohnle v. Paxton, 268 Mo. 463, 188 S. W. 155; Turner v. Ragan (Mo. Sup.), 229 S. W. 809), but they are inapplicable to the state of facts presented, unless we can agree that defendants' contention is correct in all its phases, which we proceed to discuss, that the placing of the screen in the window was not a repair or tantamount to it. It is evident that defendants did not attempt to make, nor did they in fact make, any repair with respect to the screen itself. It may be that the placing of a screen in a window or the furnishing of it is not technically a repair in a restricted sense, but we think that it was upon principle either a repair or an improvement to the building. It appears, from the surrounding facts and circumstances, that generally screens were furnished by Butterworth as building equipment

and fixtures, and that the particular window from which plaintiff fell had theretofore been equipped with a screen. In replacing the screen, defendants were restoring the building to its original condition, for, in taking the screen from it, the building as an entirety had been destroyed, even though temporarily. It may be that the placing of a screen in the window is properly classified as an improvement to the condition that plaintiff's mother found the building when she negotiated the rental thereof, and, if so, the principle is identical. In any event, whether the placing of the screen in the window be classified as a repair, or an improvement, or the restoration of the building to its original condition, the governing principle is the same. It may be well to say that plaintiff's petition pleads the facts, and is sufficient as a predicate for either of the above theories.

V. Defendants aver the absence of certain facts in the record deny to plaintiff a recovery, because (a) there is no evidence that defendants, or either of them, knew of any defect, if any, existing in the screen; (b) that no agreement obtained between plaintiff, or her parents, and the defendants, or either of them, that the screen in question was to serve as a bar across the window; (c) that even though the evidence had tended to establish that the screen was not defective, no evidence obtains that it would have kept plaintiff from falling out the window.

(a) We do not think it was necessary for the evidence to show that defendants actually knew of any defect. As a repair, improvement or restoration of the condition of the building was made, defendants were liable, if they were negligent in any way, notwithstanding they may not have had actual knowledge of any defect. However, we think the facts develop a situation tantamount to actual knowledge or notice that the outside flange or cleat of the groove in which the screen ran was in a defective condition. Price placed the screen in the window, and it was his duty to make an ordinarily careful inspection of the groove at that time to ascertain its condition. Actual notice often means knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain the ultimate fact. [Weed v. Am. Car & Foundry Co., 322 Mo. 137, l. c. 146, 14 S. W. (2d) 652.] In that case we said: "Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge." By failing to ascertain the actual condition of the groove in which the screen operated when it was placed in the window, defendants will be held to have had actual notice of what the conditions constrained them to know.

(b) We think the evidence tends to show that an agreement did obtain that the screen was to serve as a bar across the window, as

such screen may ordinarily serve. It is common knowledge that a screen, secured as ordinarily fixed, offers some resistance to pressure upon it. Plaintiff's mother warned Price that its purpose was to keep her small children from falling from the window. When Price put it in the window, it was then his duty to see that the screen was fixed therein, as ordinarily done. This was a question for the jury.

(c) We also think that it was a question for the jury as to whether the screen, fixed therein as ordinarily done, would have kept plaintiff from falling out the window. As we have previously said, it is common knowledge that screens, as ordinarily fixed in windows, have some resistance to pressure, and it was a jury question under the facts, as to whether the screen, if as ordinarily and with reasonable care fixed therein, would have prevented plaintiff from falling out the window.

VI. The evidence that the outside flange of the groove was bent and mashed outward at an angle of forty-five or fifty degrees, and that it was rusty in places and in other places or spots the flange had entirely disappeared, was prima-facie proof of negligence. The facts, then, prima-facie stand, that defendants placed in the window a screen, which they agreed and knew was placed there to act, in some degree at least, to keep immature children from falling from the window, and that they had actual knowledge or its equivalent that the screen was not secured in the ordinary manner or with reasonable care, and that the placing of the screen in the window, under the facts and circumstances, was tantamount to a repair, improvement or restoration of the building, and that the condition of the outside flange was proof of negligence. We think plaintiff, under this theory, made a submissible case.

The judgment is reversed and the cause remanded. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.