Mrs. L. R. Boyd *v.* W. J. McCarty *et al.*

(*Nashville.*   December Term, 1919.)

1. **LANDLORD AND TENANT.** Lessees, knowing premises dilapidated, took them at their own risk.

Where a florist and his successor, at time of lease and transfer, knew leased premises were dilapidated, and lease contained no covenant by landlord to make repairs, florist and successor took premises at their own risk, and there was no implied covenant by landlord that they were fit for the purpose for which rented so that florist could not recoup for damages when bricks fell from the house to the greenhouse against landlord's demand for rent. (*Post, p.—.*'

Cases cited and distinguished: Schmalzried v. White, 97 Tenn., 36; Edwards v. N. Y. & H. R. R. R., 98 N. Y., 245; Jaffe v. Hartean, 56 N. Y., 398; Francis v. Cockrill, L. R, 5, Q. B. 501; Keates v. Cadogan, 10 C. B., 591.

2. **LANDLORD AND TENANT.** Failure to repair not a constructive eviction.

Failure of landlord to repair premises was not a constructive a eviction of the lessees, where the dilapidated condition of the premises was not the result of any wrongful act of the landlord, who was not under obligation, express or implied, to repair. (*Post, p.* 675.)

3. **LANDLORD AND TENANT.** Subsequent promise of landlord to repair void as without consideration.

Where the lessees of a brick house and greenhouse gave notes for the rent, the subsequent promise of the landlord's son, as her agent, to make repairs, was without consideration, and imposed no obligation on the landlord.   (*Post, pp.* 675, 676.)

Cases cited and approved: Gregor v. Cady, 82 Me., 131; Eblin v. Miller, 78 Ky., 371; Proctor v. Keith, 12 B. Mon. (Ky.), 252

Boyd v. McCarty.

Ehinger v. Bahl, 208 Pa., 250; Beakes v. Holzman, 47 Miss. Rep., 384.

4. **LANDLORD AND TENANT.** **Threat of condemnation does not affect rights of parties.**

Since the destruction of leased property by municipal action does not relieve the tenant from the obligations of his lease, mere threat of condemnation does not affect the contract rights of the parties. (*Post, pp.* 676, 677.)

Cases cited and approved: Banks v. White 33 Tenn., 613; Willcox v. Hines, 100 Tenn., 524; Hines v. Willcox, 96 Tenn., 148.

FROM SHELBY

Appeal from the Chancery Court of Shelby County. —Hon. F. H. HEISKELL, Chancellor.

J. H. WATSON, for appellant.

R. LEE BARTELS, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

The complainant entered into a contract with Pierson & McCarty Company on January 25, 1910, whereby complainant leased to Pierson & McCarty Company for a term of ten years from March 9, 1910, certain property in Memphis described as "the two-story brick house and lot on west side of Dunlap street, one hundred and five feet fronting on Dunlap street, and running back to Ragland avenue, near north gate of Elmwood Cemetery." This property was rented for

greenhouse purposes. The rent was $3,600, evidenced by one hundred and twenty notes for $30 each, payable monthly. In addition to the notes the lessees were to pay certain taxes on the property during the term. There is no other provision of the lease material to this inquiry.

Pierson & McCarty Company seems to have been a trade-name under which S. G. Hexter was doing business as a florist. He conducted this business at this place up until the year 1916, when he transferred his lease to defendant McCarty, who continued the same kind of business on these premises.

The rent notes were paid by Hexter and McCarty until March, 1917. They have made no payments since. This bill was filed to recover the amount of the unpaid notes, and also certain taxes which it is alleged the defendants failed to pay according to contract.

The defendants answered and interposed a certain claim for damages by way of recoupment, and the chancellor rendered a decree in defendant's favor, from which the complainant has appealed.

The proof shows that the house on this property was in a dilapidated condition when the lease was made. It does not appear, however, to have been in such condition as that it amounted to a nuisance to anybody prior to 1915. At that time the city authorities condemned the house as unsafe and ordered it to be torn down, but this order was never enforced.

Defendants' claim for damages arises in this way: The greater portion of the lot not occupied by the house was covered with greenhouses. Defendants allege and

introduce proof tending to show that in March, 1917, bricks and shingles from the old house blew down on the greenhouse and broke the glass, and the flowers and plants in the greenhouse were thereby exposed and damages by the cold. This damage in March, 1917, is estimated to have been about $80. In December, 1917, the glass on the greenhouse was again broken in the same way during a severe spell of weather, and defendants claimed that the contents of the greenhouse was damages to the extent of about $1,300. After the last accident McCarty vacated the premises.

The defendants ceased to pay rent notes after the loss in March, 1917, and called upon complainant to repair the old house and make it safe. There is a letter in the record from the son of complainant who is alleged to have been her agent in response to this demand of defendants for repairs, in which he agreed that the necessary repairs would be made. Defendants also testify to other assurances from complainant's son that he would have such repairs made.

Under these circumstances the chancellor was of opinion that defendants were entitled to recoup their damages against the complainant's demand for unpaid rent. In this we think his honor was in error.

The lease contract contains no covenant on the part of the landlord to make any repairs to the premises demised. The defendant Hexter was familiar with the condition of the property when he leased it, and defendant McCarty was familiar with the condition of the property when he took a transfer of the original lease to himself. There was no fraud whatever on the part of the lessor.

We think under such circumstances the tenant takes the premises as he finds them at his own risk, and there is no implied covenant to be ascribed to the landlord that they are fit for the purposes for which they are rented. It therefore follows that the landlord is not responsible to his tenant under such circumstances for damages occasioned by the landlord's failure to repair them.

Principles governing this case have been set out by the court in *Schmalzried* v. *White,* 97 Tenn., 36, 36 S. W., 393, 32 L. R. A., 782, where, speaking of the londlord, the court said:

"It does not make him an insurer to the tenant. On the contrary, in the ordinary contracts of letting, it does not imply any warranty on the part of the landlord that the leased premises are in a safe and habitable condition, since the tenant ordinarily has it in his power to inspect the premises and so accept them at his own risk. Buswell on Law of Per. Inj., 82.

"In *Edwards* v. *N. Y. & H. R. R. R.,* 98 N. Y., 245, it is said: "It is a universal rule, to which no exception can be found in any case now regarded as authority, that upon the demise of real estate, there is no implied warranty that the property is fit for occupation or suit able for the use or purpose for which it is hired.'

"In *Jaffe* v. *Hartean,* 56 N. Y., 398 (S. C., 15 A. R., 438), it was held that 'a lessor of buildings, in the absence of fraud or any agreement to that effect, is not liable to the lessee or others lawfully upon the premises for their condition, or that they are tenantable and may be safely and conveniently used for the purposes for which they are apparently intended.'

"In *Francis* v. *Cockrell,* L. R., 5 Q. B., 501, KELLEY, C. B., said that there was no implied warranty by the lessor that the demised real estate 'shall be reasonably fit, or fit at all, for the purpose for which it is let;' and in *Keates* v. *Cadogan,* 10 C. B., 591, the rule is stated to be that 'no action lies by a tenant against a landlord on account of the condition of the premises leased, in the absence of an express warranty or active deceit.'" *Schmalzried* v. *White,* supra.

It is urged that the failure on the part of the complainant to repair these premises amounted to a constructive eviction of the defendants. This could not, however, be true unless the duty of making repairs rested upon the lessor.

"The mere fact, however, that the premises become untenantable if such condition is not the result of any wrongful act of commission or omission on the part of the landlord cannot be the basis of an eviction." 16 R. C. L., p. 686.

"Eviction necessarily being the result of an intended, willful, wrongful act, must be a willful omission of duty or a commission of a wrongful act where there is no duty not complied with, and no wrongful act committed by the landlord toward the tenant, no eviction occurs." *Barrett* v. *Boddie,* 158 Ill., 479, 42 N. E., 143, 49 Am. St. Rep., 172.

Likewise it follows since the complainant here has not been guilty of the breach of any legal duty in failing to repair, she cannot be held to have breached the covenant for quiet enjoyment. *Blaustien* v. *Pincus,* 47 Mont. 202; Ann. Cases, 1915C. 405 is not in point.

It is insisted that the complainant became legally obligated to make repairs by reason of the promise of her son and agent heretofore referred to. We think, however, this promise was absolutely without consideration. The agreement of the defendants to remain and to pay the rent notes furnish no consideration for this promise to repair, even if the authority of the agent in this respect be conceded. The lessees were bound to pay the rent notes anyhow, and the agreement relied on was *nudum pactum.* Such is the weight of authority. *Gregor* v. *Cady,* 82 Me., 131, 19 Atl., 108, 17 Am. St. Rep., 466; *Eblin* v. *Miller,* 78 Ky., 371; *Proctor* v. *Keith,* 12 B. Mon. (Ky.), 252.

Defendants rely on *Ehinger* v. *Bahl,* 208 Pa., 250, 57 Atl., 572, and *Beakes* v. *Holzman,* 47 Misc. Rep., 384, 94 N. Y. Supp., 33, announcing a contrary rule. We think these cases can be distinguished on their facts. If not, we regard the authorities first cited as better reasoned.

Defendants refer us to cases which hold that, when the property leased is condemned by municipal authorities, the cost of tearing it down or repairing it, as between landlord and tenant, must be borne by the former. We do not think these cases are pertinent. It has been expressly decided in this State that the destruction of leased property by municipal action does not relieve the tenant from the obligations of his lease. *Banks* v. *White,* 33 Tenn. (1 Sneed), 613. Mere threat of condemnation, therefore, would not affect the contract rights of the parties.

*Willcox* v. *Hines,* 100 Tenn., 45 S. W., 781, 66 Am. St. Rep. 761, and *Hines* v. *Willcox,* 96 Tenn., 148, 33 S. W., 914, 34 L. R. A., 824, 832, 54 Am. St. Rep., 823, are obviously not relevant. These cases relate to defects of which the tenants are ignorant.

The decree of the chancellor must accordingly be reversed, and a decree rendered here for the complainant. If the parties can agree on the amount thereof, such a decree may be prepared and entered. The defendants will pay the costs.