## HAIRE v. AMERICAN TRUST & BANKING CO.

Eastern Section. April 13, 1935.

Petition for Certiorari denied by Supreme Court, May 16, 1936.

Estill & Morgan and Tillett & Wetherford, all of Chattanooga, for plaintiff in error.

C. G. Milligan and Sizer, Chambliss & Kefauver, all of Chattanooga, for defendant in error.

DeWITT, J. This action was brought by R. L. Haire against the American Trust & Banking Company, as trustee of the estate of G. N. Henson, deceased, to recover damages for personal injuries alleged to have been sustained by falling from one of the steps of a residence into which he was attempting to go to visit his sick brother, who was the father of Arthur Haire, who had rented the residence as tenant. The negligence charged was the maintenance of one of the steps in a defective condition, there being a hole in a rotten plank of the step; and it was averred that the plaintiff's foot was caught in this hole, and, in an effort to extricate himself from the hole, he was thrown violently onto the ground on a tile walkway, the approach to the steps, and was severely injured. It was charged that the defendant trustee had breached its duty to keep the premises in repair, that the plaintiff was injured while he was exercising reasonable care, and that the defective and unsafe condition of the plank existed at the time the premises were leased to the tenant, and that this defect was known to the defendant trustee or could have been known by it by the exercise of reasonable care and diligence. To the declaration the defendant interposed a plea of not guilty.

Upon the trial the jury returned a verdict for the plaintiff for $3,500; but the trial judge, upon the hearing of the motion for new trial, decided that he should have sustained the defendant's motion for peremptory instructions in its favor, made at the close of all the evidence, and he set aside the verdict already rendered and dismissed the action. The trial judge then overruled a motion made by the plaintiff for a new trial. Upon his appeal in error the plaintiff presents six assignments of error, involving certain propositions of law and fact, although there is no assignment specifically stating that it was error to direct a verdict for the defendant and dismiss the suit.

The evidence reveals the following facts without dispute:

The house and lot belonged to G. N. Henson. On August 21, 1914, he conveyed it and other property to the American Trust & Banking Company as trustee under the terms of a trust agreement entered into between them on that same day, whereby the trustee was obligated to "take charge of and manage said property, collect the rents therefrom, pay the taxes and keep it properly insured and in repair." The agreement made provision as to payment of the net income to certain beneficiaries. The property was controlled and managed by the said trustee under this trust agreement and conveyance. The plaintiff's nephew, Arthur Haire, had rented this property from the trustee. His father was living there with him. They had moved there in July, 1932. On September 25, 1932, the plaintiff went there to visit his brother, who was the father of Arthur Haire and who later died. On this visit he had a fall and was injured, for which he sued.

There was no stipulation in the lease between the trustee and the tenant that the trustee would keep the property in repair.

This is the extent of the material undisputed evidence.

As to breach of duty to keep the premises in repair, the plaintiff relies, first, upon the obligation imposed upon the trustee by the deed, and, second, upon an alleged agreement by the trustee to repair the step.

The deed embodied a contract solely between the grantor and the trustee for the preservation of the property. It did not extend to a contractual obligation to the tenant or his invitee. In Stenberg v. Willcox, 96 Tenn., 163, 33 S. W., 917, 34 L. R. A., 615, it was held that the plaintiff, a boarder in a boarding house rented by the tenant, could not recover of the landlord even upon any contract between the tenant and the landlord, of which the plaintiff knew nothing and to which she was not a party, but could recover, if at all, upon the ground that the landlord leased premises in a dangerous and unsafe condition, when he knew, or might by the exercise of reasonable diligence and care have known, of such unsafe condition, and upon the further ground that plaintiff did not know of such unsafe condition and could not have known of it by the exercise of reasonable diligence and care. In Willcox v. Lillie Hines, 100 Tenn., 524, 45 S. W., 781, 66 Am. St. Rep., 761, the same rules were restated as to a guest of the tenant.

In the instant case it is an invitee of the tenant who is seeking to recover of the landlord. The landlord is not an insurer of the safety of the premises (Schmalzried v. White, 97 Tenn., 36, 39, 36 S. W., 393, 32 L. R. A., 782), but he is liable only within certain rules of contractual obligation or for negligence as prescribed. The plaintiff, R. L. Haire, was an engineer on the Southern Railway. He testified that on the night of September 25th he went to that place for the first time to visit his sick brother; that the place was dark, and, as he stepped on about the fourth or fifth step, his heel

was hung in a hole in the step; it twisted him around, and he fell back down to the bottom of the steps on the concrete or tile walk, suffering the fracture of his shoulder and some other injuries. He said that he did not see the hole in the plank before he stepped on it. We must accept this testimony as true, although Mrs. Robinson and Mrs. Martin, neighbors, and Dr. Reisman, his physician, testified that afterward the plaintiff told them that the place where he fell and was hurt was at the entrance from the public sidewalk to the walk leading to the steps, that at that place it was one step down from the level of the sidewalk to the level of the walk in the yard, and that he stumbled at that place and fell. The plaintiff denied that he made these statements. The jury evidently believed that he fell at the place and in the manner described in his testimony. This is binding upon this court.

■ As to any subsequent agreement to repair the step, it appears that the trustee had an arrangement with one Edwards, who lived next door to Haire, to do repairing on the houses in its charge under the trust. Arthur Haire, the tenant, testified that in August, 1932, he mentioned the step to a man at the trustee's office and was told to see Edwards and he would fix it. On cross-examination, he said that this was in the following December, after the accident occurred. Mrs. Arthur Haire testified that before the accident she told Edwards of the condition of the step, and he said that he would fix it. It was not repaired until after the accident. The testimony of Arthur Haire is so conflicting that it is too insubstantial to warrant any conclusion that the trustee made a contract to repair the step before the accident. When asked why he did not insist on the repairs, he said, "It was nothing to me to do anything about it." The testimony of Mrs. Haire does not establish a contract with the trustee to repair the step. At most it shows merely a promise by the employee which would not bind the landlord and was perhaps merely gratuitous. As there was no substantial evidence of an agreement by the trustee to repair the step before the accident, we need not discuss the matter of consideration for such a promise or the effect of a mere gratuitous undertaking to repair as to the rights of an invitee.

The tenant, Arthur Haire, and his wife testified that, when the lease was made and they moved into the house, there was a little hole and a rotten place in the step. He described the condition in the following testimony:

"Q. I will ask you what was the condition of these steps that went into your house there at 618 East Sixteenth Street? A. All of them were pretty good steps except one and it had a rotten place in it; kind of long ways in it, in one place, two different places in it, one was the long place about that wide (indicating) another place had a hole in it about that big around (indicating), they were right at one another though.

"Q. How is that? A. Two places where they were rotted, one kind of long place and another just a hole but it was two places right at one another though."

They therefore knew all the time of the condition of which the plaintiff complains, although he himself did not know of it. Had the tenant himself been injured thereby, he would have had no right of action, under the rule of Willcox v. Lucy Hines, 100 Tenn., 538, 46 S. W., 297, 41 L. R. A., 278, 66 Am. St. Rep., 770; for he knew of the defect and would have taken the risk himself. See, also, Boyd v. McCarty, 142 Tenn., 670, 222 S. W., 528. Many authorities hold that, where the tenant would have no right of action against the landlord, a guest or invitee has none; that a guest or invitee enters the premises under the same title as the tenant, not by any invitation from the owner, and hence he assumes the same risk as the tenant. See 36 C. J., 224, 16 R. C. L., 1068, and cases there cited. But this rule, based upon rigid logic, does not leave room for application of a principle quoted with apparent approval in Stenberg v. Willcox, supra, from Woodfalls on Landlord and Tenant (13 Ed.), 735, that an exception to the general rule, that the tenant and not the landlord is liable to third persons for any accident or injuries occasioned to them by the premises being in a dangerous condition, arises where the landlord lets the premises in a ruinous condition. We must now determine whether or not the defendant let the premises in such condition.

In addition to Arthur Haire's description of the step, his wife testified that, when she called the attention of Edwards to the step, there was just a little bit of a place, a little hole, the wood rotten around it, and that it afterward became worse and worse. Their neighbor, Mrs. McBurnett, said that it was a hole, "sort of rotten around it," and that it got larger. It is manifest from this testimony that the hole or defect was considerably greater when the plaintiff placed his foot in it.

From all this evidence we think that it could not reasonably be concluded that the defendant let the premises in a ruinous condition—causing, or tending to cause, ruin, or being dilapidated. To bring a case within such exception there must be evidence of more serious and substantial dilapidation or decayed condition of the structure. It is not infrequent that small holes or other defects exist in such houses when leased, and to hold that they constitute a ruinous condition would strain unreasonably the rule and do violence to its intent.

The assignments of error are overruled, and the judgment dismissing the suit is affirmed at the cost of the plaintiff.

Faw, P. J., concurs.

CROWNOVER, J. (dissenting). I am compelled to dissent from the opinion in this case for two reasons: First. The agreement on

the part of the trustee to keep the property insured and ''in repair'' is a covenant that runs with the land and makes the trustee liable to third persons for injuries resulting from unsafe condition of the premises. Commercial Club v. Epperson, 15 Tenn. App., 649. I do not think the trustee can avoid liability by renting out the property to a tenant without any agreement as to the repairs. Second. I think there is enough evidence in the case that the trustee or landlord agreed to repair to carry the case to the jury; therefore I think the judgment should be reversed and the cause remanded for a new trial.