**In re CAROLINA STEEL CORPORATION,**
**Debtor.**

**Bankruptcy No. 93 B 44305 (JLG).**

United States Bankruptcy Court,
S.D. New York.

March 24, 1995.

Anderson Kill Olick & Oshinsky, P.C., New York City, for Jackson Nat. Life Ins. Co.

Ellery E. Hill, Jr., Knoxville, TN, for claimants.

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Jackson National Life Insurance Company ("Jackson National"), on behalf of Carolina Steel Corporation ("Carolina"), a reorganized debtor, objects to the $6 million general unsecured claim (the "Claim") timely filed on behalf of Reclamation Services, Inc. ("Reclamation Services") and its President, David Comer (collectively "the Claimants"), and seeks entry of an order pursuant to 11 U.S.C. § 502 disallowing and expunging the Claim. For the reasons stated below, we find that the Claim should be expunged and disallowed in its entirety.[1]

1. Our subject matter jurisdiction of this contested matter is predicated on 28 U.S.C. §§ 1334(b)

*Facts*

The underlying facts are not in dispute. *See* Tr. at 67–75.[2] Pursuant to agreements dated on or about September 20 and November 9, 1989, respectively (the "Sublease Agreements"), Reclamation Services subleased certain buildings located in Knoxville, Tennessee, from Carolina.[3] In June 1991, Reclamation Services was in default under those agreements and on July 30, 1991, Carolina filed a Detainer Warrant in the General Sessions Court for Knox County, Tennessee. At a hearing held on September 3, 1991, Reclamation Services admitted that it was in default under the Sublease Agreements and judgment in favor of Carolina was entered for possession, back rent and unpaid utility bills. The parties negotiated an accord and satisfaction of that judgment and Reclamation Services' sub-tenancy was continued subject to its faithful compliance with its obligations under the Sublease Agreements. It breached that accord and Carolina filed a Writ of Possession on January 16, 1992. A second Detainer Warrant was filed on July 31, 1992.

Claimants and Diane Comer, d/b/a Central Recycling, then commenced an action against Carolina in the Chancery Court of Knox County, Tennessee (the "State Court Action"). In substance, their complaint (the "State Court Complaint") alleges that (i) Claimants subleased the buildings intending to sub-sublease them to third parties, (ii) Carolina knew that fact, (iii) Carolina knew that latent, undiscoverable defects in the buildings rendered them unfit for Claimants' intended use, and (iv) Carolina intentionally withheld that information from Claimants. The complaint seeks compensatory and punitive damages aggregating $6 million and a discharge from defaulted and future obligations under the Sublease Agreements. It alleges the following causes of action:

 (i) fraud and fraud in the inception and fraud in the inducement;

 (ii) anticipatory breach of the Sublease Agreements;

 (iii) commercial impracticability;

 (iv) false pretenses;

 (v) breaches of the Sublease Agreements;

 (vi) intentional infliction of economic and emotional distress; and

 (vii) intentional omission and misrepresentation of material facts.

On September 28, 1992, Carolina answered the complaint and asserted a Counter Complaint against the Claimants to recover unpaid rent and utility payments, and possession of the buildings. Claimants failed to answer the Counter Complaint. On or about December 1, 1992, Carolina moved for the entry of an order of possession of the buildings. That motion was granted on December 3, 1992, and the court directed Reclamation Services to vacate the premises on or before January 26, 1993.

The State Court Action was set for trial on January 26, 1993. That day, Claimants moved by oral notice in open court pursuant to Rule 41.01 of the Tennessee Rules of Civil Procedure[4] to dismiss the complaint, without

and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This motion is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B).

**2.** "Tr." refers to the transcript of the hearing held on the objection to the Claim.

**3.** Claimants subleased ten (10) buildings. The September 20 agreement covered the premises described as "Building 32", while the November 9 agreement extended to "Buildings 1, 2B, 3B, 6, 9, 19, 19A, 28 and 29." *See* Affidavit of Eric W. Sleeper In Support of Reorganized Debtors' Objection To Claim No. 00825 Of David Comer and Reclamation Services, Inc. ("Sleeper Aff."), Ex. 1

(September 20 Sublease Agreement) and Ex. 2 (November 9 Sublease Agreement).

**4.** Rule 41.01 of the Tennessee Rules of Civil Procedure states, in relevant part, as follows:

Subject to the provisions of Rule 23.05 and Rule 66 or any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action ... by an oral notice of dismissal made in open court during the trial of a cause ... If a counterclaim has been pleaded by a defendant prior to the service upon him of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff. Rule 41.01.

prejudice. The motion was granted and the decision was memorialized in the Chancery Court's February 9, 1993 order. In response to Claimants' motion, Carolina moved by oral motion pursuant Rule 12.03 of the Tennessee Rules of Civil Procedure [5] for the entry of judgment on its Counter Complaint. On the record of those proceedings, Claimants' counsel confessed judgment for unpaid rent and utility obligations owing to Carolina in the sum of $96,066.45. The confession of judgment is reflected in the February 9 order. In March 1993, the Claimants unsuccessfully moved the Chancery Court to reconsider that aspect of the February 9 order.

■ Section 28–1–105(a) of the Tennessee Code Annotated is commonly known as the "Tennessee Savings Statute." *See Banks v. Dement Constr. Co.,* 817 S.W.2d 16, 18 (Tenn. 1991); *Bennett v. Town & Country Ford, Inc.,* 816 S.W.2d 52, 53 (Tenn.Ct.App.1991). In part it states that "[i]f [an] action is commenced within the time limited in a rule or statute of limitation, but the judgment or decree is rendered *against the plaintiff* upon any ground not concluding his right of action ... the plaintiff ... may, from time to time, commence a new action within one (1) year [of the judgment or decree] ...". This provision applies to actions dismissed pursuant to Rule 41.01. *See Bennett v. Town & Country Ford, Inc.,* 816 S.W.2d at 52; *Turner v. N.C. & St. L. Ry.,* 199 Tenn. 137, 285 S.W.2d 122 (1955). The parties agree that to preserve the claims alleged in the State Court Complaint, the Claimants were required to refile that complaint on or before February 9, 1994. *See* Tr. at 20. On August 24, 1993, an involuntary petition pursuant to chapter 11 of the Bankruptcy Code ("Code") was filed against Carolina. On October 4, 1993, Carolina, Carolina Steel Holdings, Inc., and CSC Concrete Company filed separate voluntary petitions for relief under chapter 11 of the Code and Carolina filed a Notice of Con-

sent to Entry of an Order for Relief under chapter 11 of the Code. On January 25, 1994, without seeking leave of this Court, Claimants' counsel refiled the State Court Complaint. On February 24, 1994, counsel timely filed the Claim.

*Discussion*

■ Although the Bankruptcy Code provides the mechanism for enforcing creditor rights, those rights are a creation of state law. *Matter of Chicago, Milwaukee, St. Paul, and Pacific R. Co.,.* 791 F.2d 524, 532 (7th Cir.1986); *In re Johnson,* 120 B.R. 461, 468 (Bankr.N.D.Ind.1990). Thus, in § 502 litigation the validity of a claim is determined by reference to state law. *In re Johnson,* 756 F.2d 738, 741 (9th Cir.1985), *cert. denied Johnson v. Righetti,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). The Sublease Agreements were negotiated and executed in Tennessee and each provides that it will be construed under Tennessee law. *See* September 20 Sublease Agreement at ¶ 18, November 9 Sublease Agreement at ¶ 18. Accordingly we will apply that law in assessing the merits of the Claim. *Compare In re Burger,* 125 B.R. 894, 900 (Bankr.D.Del.1991) (claim predicated on alleged breach of contract is determined by Delaware law where contract provided that it would be construed in accordance with Delaware law). Jackson National contends that Claimants' acted in violation of § 362 by refiling the State Court Complaint without first obtaining leave of this Court. They contend that Claimants' action was void *ab initio* and, as such, that the Claim is time barred by § 28–1–105(a). Section 108(c) of the Bankruptcy Code states, in relevant part, as follows:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in

---

5. Rule 12.03 of the Tennessee Rules of Civil Procedure states, as follows:

 Motion for Judgment on the Pleadings.—After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not exclud-

ed by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

Rule 12.03.

a court other than the bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 ... of this title ... with respect to such claim.

11 U.S.C. § 108(c). We are not aware of any provision under Tennessee law which, in this case, would suspend the one (1) year period under § 28–1–105(a). However, because the automatic stay has remained in effect with respect to the State Court Action since the commencement of Carolina's chapter 11 case, the period under § 28–1–105(a) has been tolled. *See* 11 U.S.C. § 108(c)(2).[6] The Claim is not time barred under Tennessee law.[7]

The Claim consists of a Standard Form Proof of Claim which annexes the State Court Complaint, together with the exhibits thereto. During the hearing, Claimants explained that notwithstanding the allegations contained in the complaint, the gravamen of the Claim is that by failing to disclose latent defects in the buildings, Carolina fraudulently induced Claimants to enter into the Sublease Agreements. *See* Tr. at 77–78. They contend that Carolina failed to disclose the following: (i) water pipes in the demised buildings had frozen and burst; (ii) water service to each of those buildings had been discontinued; (iii) the buildings were not in compliance with applicable local fire codes or regulations because the sprinklers were inoperable, and (iv) after heavy rains water pooled in certain of the buildings. *See* Tr. at 76–77, 95. Carolina admits that it knowingly failed to disclose defects in the buildings to Claimants. Aldridge Dep. at 120, 123, 124, 126.[8] Nonetheless, Jackson National contends that because Carolina had no duty to disclose those defects, its failure to do so cannot sustain Claimants' assertion that Carolina fraudulently induced them to enter into the Sublease Agreements.

The elements of a cause of action for fraud are:

1. a knowing or reckless misrepresentation of a material fact;

2. reasonable reliance by the plaintiff on the misrepresentation; and

3. damages to the plaintiff as a direct result of that misrepresentation.

*E.g., Hill v. John Banks Buick,* 875 S.W.2d 667, 670 (Tenn.Ct.App.1993) (citing *Oak Ridge Precision Industries, Inc. v. First Tennessee Bank National Association,* 835 S.W.2d 25, 29 (Tenn.Ct.App.1992)). A failure to disclose is actionable only if disclosure was required. There are three instances in which disclosure is mandated under Tennessee law:

1. Where there is a previous definite fiduciary relationship between the parties.

2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.

---

**6.** By refiling the State Court Complaint without seeking leave of this Court, Claimants violated the automatic stay and their action was void *ab initio. See Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir.1994) ("The stay is effective immediately upon the filing of the petition, ... and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect...." (citations omitted)). However, because the period under § 28–1–105(a) was tolled, Claimants were not required to refile the complaint to preserve the Claim. They preserved it by timely filing their proof of claim.

**7.** During the hearing on the objection, and in response to Jackson National's argument that the Claim is time barred, we ruled that by applica-

tion of § 108(c), the one year period of limitations under § 28–1–105(a) was tolled by the filing of the petition. *See* Tr. at 60–66. Neither party addressed the applicability of § 108(c) in the papers filed prior to the hearing. At the close of the hearing we authorized both parties to file additional memoranda and specifically authorized Jackson National to address the § 108(c) issue. *See* Tr. at 108. Although both parties filed supplemental legal memoranda, neither addressed § 108(c).

**8.** "Aldridge Dep." means the transcript of the December 17, 1992 deposition of Lawrence Emanuel Aldridge, an employee of Carolina. A copy of that transcript was annexed as Ex. 6 to the Sleeper Affidavit. The parties stipulated to its admissibility herein.

3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith.

*See Gibson Greetings, Inc. v. Associated Warehouses, Inc.*, 1993 Tenn.Ct.App. 409, 1993 WL 188299 (June 3, 1993) (citing *Macon County Livestock Market v. Kentucky State Bank*, 724 S.W.2d 343, 349 (Tenn.Ct.App. 1986)); *Hill v. John Banks Buick*, 875 S.W.2d at 29; *Piccadilly Square v. Intercontinental Construction Co.*, 782 S.W.2d 178, 184 (Tenn.Ct.App.1989).

 None of these circumstances exist here. A landlord-tenant relationship is not *per se* a fiduciary one. *See Fisher Development Corp. v. Boise Cascade Corp.*, 37 F.3d 104, 111 (3d Cir.1994); *Top–All Varieties, Inc. v. Raj Development Co.*, 173 A.D.2d 604, 570 N.Y.S.2d 184, 185 (N.Y.App.Div.1991); *NOPA Realty Corp. v. Central Caterers, Inc.*, 91 A.D.2d 991, 457 N.Y.S.2d 851, 853 (N.Y.App.Div.1983). The Sublease Agreements are not intrinsically fiduciary and by their terms did not create a fiduciary relationship among the parties. In Tennessee, there is no covenant or warranty implied by a landlord that a leased premises will be fit, tenantable or suitable for the use for which the tenant requires them. *See Pulaski Housing Authority v. Smith*, 39 Tenn.App. 213, 282 S.W.2d 213 (1955); *Boyd v. McCarty*, 142 Tenn. 670, 222 S.W. 528 (1919); *Schmalzreid v. White*, 97 Tenn. 36, 36 S.W. 393 (1896). The rule of *caveat emptor* applies to leases of real property: the tenant must examine the demised premises to insure that they are suitable to the desired purpose. *See Robinson v. Tate*, 34 Tenn. App. 215, 236 S.W.2d 445 (1950). *See also Cappaert v. Junker*, 413 So.2d 378 (Miss. 1982); *Craig v. Gate Maritime Properties, Inc.*, 631 So.2d 375 (Fla.Dist.Ct.App.1994).

Absent an express inquiry calling for a statement of fact about the condition of the premises, or the existence of a hidden condition known to the lessor and not discoverable upon ordinary inspection which renders the premises unfit for use and occupancy, the landlord has no duty to disclose defects in the premises and the existence of such a defect is no defense to an action in contract. *See 49 Am.Jur.2d* § 791.[9] The case of *Winstead v. First Tennessee Bank N.A.* 709 S.W.2d 627 (Tenn.Ct.App.1986), which was cited by both parties, is instructive on how the principle of *caveat emptor* is applied under Tennessee law to real estate transactions. In that case, plaintiffs purchased a parcel of real property on which they planned to relocate their appliance store. *Id.* at 629. In so doing, they relied upon representations from their real estate agent and their attorney that the parcel was zoned for commercial use. *Id.* However, the property was also subject to subdivision restrictions which prevented commercial use of the property, a fact which was imparted to plaintiffs' attorney but which plaintiffs did not discover until after the sale. *Id.* at 630. When plaintiffs' learned that they could not relocate their store to the newly purchased property, they sued their attorney, their real estate broker and the seller, among others, to rescind the agreement and recover their down payment and damages, alleging fraud and/or negligent misrepresentation. *Id.* The trial court granted judgment to plaintiff finding that defendants defrauded them by failing to disclose that the property could not be used for its intended purpose. *Id.* The Tennessee State Court of Appeals reversed, reasoning that because plaintiffs' attorney was aware of the zoning limitations and plaintiffs are charged with his knowledge, plaintiffs

---

**9.** A landlord will be liable in tort for injuries suffered by a tenant at the premises if those injuries are proximately caused by unsafe conditions at the premises. *See, e.g., Manes v. Hines & McNair Hotels*, 184 Tenn. 210, 197 S.W.2d 889 (Ct.App.1947) (tenant injured by fall caused by slippery floor); *Armstrong v. Bowman*, 21 Tenn. App. 673, 115 S.W.2d 229 (1937) (wrongful death caused by unsafe elevator); *Haire v. American Trust and Banking Co.*, 19 Tenn.App. 656, 94 S.W.2d 59 (1935) (brother of tenant injured in fall caused by unsafe step); *Bishop v. Botto*, 16 Tenn.App. 178, 65 S.W.2d 834 (1932) (tenant injured when gas accumulating in old cistern beneath house caused explosion); *Wilcox v. Hines*, 100 Tenn. 538, 46 S.W. 297 (1898) (tenant injured by collapse of defective back porch); *Hines v. Wilcox*, 96 Tenn. 148, 33 S.W. 914 (same), *reh'g denied*, 96 Tenn. 328, 34 S.W. 420 (1896); *Kaylor v. Magill*, 181 F.2d 179 (6th Cir. 1950) (employee injured in fall caused by loose step). Because the Claim is predicated on the Sublease Agreements, those cases are inapposite and Claimants' reliance on them is misplaced.

could not have been defrauded. *Id.* at 632. The court stated, as follows:

> [W]here the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely upon their own judgment, generally they must be presumed to have done so, or, if they have not informed themselves, they must abide the consequences of their own inattention and carelessness. Unless the representations are such as are calculated to lull the suspicions of a careful man into a complete reliance thereon, it is commonly held, in the absence of special circumstances, that, where the means of knowledge are readily available, and the vendor or purchaser, as the case may be, has the opportunity by investigation or inspection to discover the truth with respect to matters concealed or misrepresented, without prevention or hindrance by the other party, of which opportunity he is or should be aware, and where he nevertheless fails to exercise that opportunity and to discover the truth, he cannot thereafter assail the validity of the contract for fraud, misrepresentation or concealment with respect to matters which should have been ascertained, particularly where the sources of information are furnished and attention is directed to them, as, for example, where the source of accurate information is indicated or referred to in the contract.

*Id.* at 633 (citing *Pakrul v. Barnes,* 631 S.W.2d 436 (Tenn.Ct.App.1981) (quoting 91 C.J.S. Vendor and Purchaser § 68, at 645–6)).

█ Prior to entering into the Sublease Agreements, Comer developed expertise in negotiating commercial agreements. Tr. at 71. He read both agreements and did not seek legal assistance in interpreting them. Tr. at 70. Comer was given access to all of the buildings when the Sublease Agreements were negotiated. Tr. at 69–70. However, he declined to have them inspected or even to have an electrician, plumber, building inspector, insurance representative, or other person with experience regarding the maintenance of improved real property accompany him when he walked through the buildings. Tr. at 70. Claimants adduced no evidence showing that the defects in the buildings were latent defects. Assuming *arguendo* that they were, Claimants have not alleged, let alone established, that those defects were not discoverable upon ordinary inspection. The evidence shows that at least some of the defects were plainly discoverable. *See* Aldridge Dep. at 179. Comer did not specifically inquire of Carolina about the existence of defects in the buildings. Tr. at 122, 138, and 179. Accordingly, although Carolina had knowledge of the defects, under these facts it was under no duty to disclose them. As such, the failure to do so is not a misrepresentation giving rise to a claim for fraud. *See Dozier v. Hawthorne Development Co.,* 37 Tenn.App. 279, 262 S.W.2d 705 (1953); *Winstead v. First Tennessee Bank, N.A., Memphis,* 709 S.W.2d 627.

### *Conclusion*

Based on the foregoing, the Claim is disallowed and expunged in its entirety.[10]

SETTLE ORDER.

---

**10.** As alternative relief, Jackson National requested that we estimate the Claim at $0. In light of our disposition of this matter we need not consider that request.