IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 5, 2007 Session

## LILLIE WALKER v. COLLEGETOWN MOBILE ESTATES, INC.

**Direct Appeal from the Circuit Court for Bradley County**
**No. V-05-817     Hon. John B. Hagler, Jr., Circuit Judge**

**No. E2007-01153-COA-R3-CV  - FILED JANUARY 28, 2008**

Plaintiff who fell in a mobile home sued the lessor owner for damages for injuries.  The Trial Court granted summary judgment to defendant.  On appeal, we vacate the summary judgment and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

James R. Kennamer, Chattanooga, Tennessee, for appellant.

Stuart F. James, Terri L. Bernal and S. Todd Hastey, Chattanooga, Tennessee, for appellee.

### OPINION

In this action, the plaintiff alleged that she had fallen in a mobile home leased by her daughter from defendant.  She alleged she tripped and fell on a concrete nail that was sticking up out of a vent in the floor of the mobile home, and charged that defendant had actual or constructive knowledge of the condition, and breached the duty to protect her from foreseeable danger.  She sought damages for injuries allegedly sustained in her fall. Defendant's Answer denied that it created the condition, or that defendant had any knowledge of it, either actual or constructive.  Defendant then filed a Motion for Summary Judgment, asserting plaintiff could not establish that defendant had either actual or constructive knowledge of the condition, and that the daughter's lease precluded plaintiff from recovering damages, and attached a copy of the lease.  Defendant filed an Affidavit of Ben Moore, owner/operator of Collegetown Mobile Estates, Inc., who stated that he entered the

lease with Morgan (plaintiff's daughter), and in it she agreed the home would not be occupied by more than one person, and that she also agreed that defendant would not be responsible for injury or damage to tenants or guests, and that guests could stay no longer than 7 days.

Also filed was the Affidavit of Don Westfield, who stated that he was the manager for defendant, and was responsible for complaints and repairs. He stated that in May 2004, he and lessee Morgan inspected the home before she moved in, and neither of them observed any defects. He stated that Morgan never complained of any dangerous or defective condition after moving in, and after he was informed of plaintiff's accident, he inspected the area of the vent and saw nothing that needed repair.

In response, plaintiff filed a Statement of Undisputed Facts, wherein she stated that Westfield had inspected the home before she moved in, that no work had been done to the area around the vent since then, and that Westfield conceded that the nail was probably put there before plaintiff moved in, and that the nail appeared to be a tripping hazard.

Plaintiff filed the Affidavit of Linda Morgan, who stated that she moved in to the home on April 30, 2004, and that her mother's fall occurred on October 25, 2004. She stated that no flooring work had been done since she moved in, and that Westfield had inspected the home prior to her moving in. Further, that defendant acquiesced to her mother staying with her while she recovered from surgery, and that Westfield was the only person who did any work on the home after she moved in. Morgan stated that Westfield was "aware of the nails" and later said "I was not aware they were sticking out that far."

Plaintiff also filed Westfield's deposition, wherein he testified that he had installed a stove and installed or repaired a shower door at the subject mobile home since Morgan had moved in, and that he knew that plaintiff was staying at the home at that time. Further, that no other work had been done at the home while Morgan lived there. Westfield stated that he thought plaintiff lived in the home for several months, and conceded that no one told her to leave. He conceded that he had inspected the home prior to Morgan moving in on April 30, 2004.

Westfield was asked to look at a picture, and stated that it looked like cement nails were used to hold down the vent, and that the carpet in the subject home had been put down prior to 4/30/04, and may have been the original carpet, but admitted that the carpet in the picture looked fairly new. He agreed that the vent should not be put in with a concrete nail sticking up and then bent over to hold the vent. He admitted that concrete nails were very strong/rigid, and that it appeared from the photograph that someone simply bent the nail over the vent when they couldn't get it to go all the way down. He conceded this would pose a tripping hazard.

He stated that he did not remember saying to plaintiff or Morgan that he didn't know the nails were sticking out that far, but he couldn't deny it. He stated he was 81 years old, and that since no carpet work was done in the home from 4/30/04 to the date of the injury, the condition existed prior to Morgan moving in, and Westfield's inspection report of 4/30/04 and prior inspection

reports and pictures were filed.

Defendant was allowed to amend its Answer to assert Morgan signed an indemnity agreement with defendant, and that she became an indispensable party and the action should be dismissed because the Complaint failed to join Morgan.

Defendant also filed the depositions of plaintiff and Morgan, and they both testified they had not seen the nail in the vent, but it was visible and was in the floor in the pathway to both the kitchen and front door.

At the Court's hearing on the summary judgment motion, the Court found that Morgan had violated the lease by allowing her mother to stay there for longer than was allowed, and that Morgan thus was responsible for her mother's safety. The Court also found that Morgan had superior knowledge of the condition, and had a duty to warn her guests, and he granted a summary judgment to the defendant.

On appeal, these issues are presented for review:

1. Is the question of whether the lease was breached or whether the landlord waived the subject provision a question of fact for the trier of fact?

2. Did the Trial Court err in holding that violation of the lease made the tenant solely responsible for the safety of any guest?

3. Did the Trial Court improperly hold that Walker/Morgan had superior knowledge of the defect?

Plaintiff's first two issues deal with whether the lease was actually violated, and whether this would make Morgan solely responsible for the safety of her guests. While the Trial Court did address this issue in granting the summary judgment, it is largely irrelevant, since the subject lease has no bearing on liability of the landlord under these circumstances, and since the plaintiff was not a party to the lease.

The landlord and tenant issues by the terms of the lease are separate issues and are not properly before the Court in this case.

The issue thus becomes, whether the Trial Court properly granted summary judgment on the issue of liability for the defective condition. It has long been the rule in Tennessee that a landlord is liable to his tenant or a guest for any injury resulting from unsafe or dangerous conditions of the leased premises existing at the date of the lease, if the landlord, by the exercise of reasonable care and diligence, should have known of the condition and failed to disclose it. *See Bishop v. Botto*, 65 S.W.2d 834 (Tenn. Ct. App. 1932); *Boyce v. Shankman*, 292 S.W.2d 229 (Tenn. Ct. App. 1953); *Glassman v. Martin*, 269 S.W.2d 908 (Tenn. 1954). Tennessee cases are in accord with the

Restatement 2d of Torts, §358, which states:

> A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if
>
> > (a) the lessee does not know or have reason to know of the condition or the risk involved, and
>
> > (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

In the above-cited cases, the defect was, obviously, something that was not readily observable, such as a buried cistern filled with debris, a hole in the attic floor that had been covered over, and wooden steps that had hidden termite damage. *See Bishop*, *Boyce*, and *Glassman*.

In the *Bishop* case, this Court affirmed the Trial Court's grant of a directed verdict for the defendant landlord, because there was no evidence that the defendant (who had only owned the property for a few years) had any knowledge of the long-buried cistern under the house, and its presence was not obvious upon inspection, since it simply appeared to be an "uneven place" in the dirt. The Court held that "reasonable care and diligence to discover such a defect, where there had been no knowledge upon the part of the defendant of the presence of the cistern, would not require that he go under the house and dig about in the dirt in an effort to discover something that he did not know existed." *Bishop*, at 837.

Similarly, in *Glassman and Boyce*, the latent defects were not readily observable. These cases are inapposite to the issue before us.

In this case, since summary judgment was granted to the defendant, we must view the facts in the light most favorable to plaintiff, and draw all reasonable inferences in her favor. *Gladman v. Revco Discount Drug Centers, Inc.,* 669 S.W.2d 677 (Tenn. Ct. App. 1984). In this case, Westfield conceded the nail had likely been placed there by whomever laid the carpet, and that this was done prior to Morgan moving into the home, but he stated that neither he nor Morgan observed the nail when they did a walk through inspection. Also, neither plaintiff nor Morgan observed the nail until plaintiff fell.

On this record, we do not believe summary judgment was appropriate. The issue presented by this record is whether defendant knew or should have known of the allegedly dangerous conditions in the mobile home prior to the tenant moving in, and failed to remedy the condition. Taking the strongest legitimate view of the evidence in favor of the plaintiff and all favorable

inferences, this record presents a disputed issue of material fact as to whether the lessor owner knew or should have known of any dangerous condition in the mobile home at the time of the lease. We vacate the Judgment in favor of defendant.

The cause is remanded for further proceedings in accord with this Opinion, and the cost of the appeal is assessed to defendant, Collegetown Mobile Estates, Inc.

_____
HERSCHEL PICKENS FRANKS, P.J.